ARTHUR J. GREEN *v.* STATE OF INDIANA.

[No. 171S14. Filed October 20, 1971. Rehearing denied December 20, 1971.]

*Daniel A. Roby*, of Fort Wayne, for appellant.

*Theodore L. Sendak*, Attorney General, *William D. Bucher*, Deputy Attorney General, for appellee.

ARTERBURN, C.J.—On August 22, 1962, appellant was arrested pursuant to a warrant and charged with the Crime of First Degree Murder. On April 28, 1963, the case was submitted to the court for trial by jury. On May 3, 1963, the jury found the appellant guilty of First Degree Murder (Murder in Attempt to Perpetrate a Robbery). On May 17, 1963, the court rendered judgment by sentencing the appellant to the

Indiana State Prison for life. No direct appeal was made from appellant's conviction. On February 25, 1970, appellant filed a Petition for Post-Conviction Relief under Post-Conviction Remedy Rule 1. On August 5, 1970, hearing was held on the petition, the court made findings of fact, and denied the petition. On October 23, 1970, appellant filed a Motion to Correct Errors, which, on November 2, 1970, the court overruled. Pursuant to Post-Conviction Remedy Rule 1, sec. 7, appellant appeals from the court's final judgment in the Post-Conviction proceeding.

Appellant presents two questions for our consideration, they are:

(1) Whether certain confessions and incriminating statements made by the appellant were properly admitted into evidence;

(2) Whether a bullet removed from appellant's body and testimony concerning the removal was properly admitted into evidence.

The facts relevant to the issues presented are summarized as follows. At 11:00 p.m. on August 13, 1962, an employee of the State Line Pizza, in Hammond, Indiana, was shot in an attempted robbery. In the course of the attempted robbery the employee had fired three shots, at the robber, from a revolver kept behind the counter in the store. Shortly after the attempted robbery, another store employee who had been delivering pizza, returned to the store and found the wounded employee. The wounded employee was still alive and told the second employee what had happened and that he had wounded the man who had attempted to rob him. The second employee then made a report of the incident to the Hammond Police. The wounded employee was taken to a hospital, where he soon died. At 4:00 a.m., the morning of August 14, 1962, Calumet City, Illinois, Police Officer Robert Costello, received a radio call to go to a residence in Calumet City, Illinois. When he and another officer arrived they were met at the door by a little girl who said that her father was in

another room injured. The officers proceeded to the other room and found the appellant lying on a bed. The officers saw that the appellant was bleeding and injured. Calumet City, Illinois is a very short distance from Hammond, Indiana, and the officers knew of the shooting incident at the State Line Pizza in Hammond and of the circumstances incident thereto. Officer Costello gave the following testimony concerning his action upon seeing the appellant:

> "I asked Mr. Green (Appellant) what was the trouble and he said he had been shot. I then asked him if he participated in the State Line Pizza shooting and he said he did, and I asked what he did with the gun and he said he ran out of the pizza place and threw the gun away a short way away, and then he passed out."

The appellant was then taken to a hospital. Upon arrival at the hospital, appellant was taken to an X-Ray room where he was questioned by Hammond Police Officer, Edward Herkey who gave the following testimony regarding his conversation with the appellant at that time:

> "I asked Mr. Green if he was involved in a shooting during an attempted robbery at State Line Pizza. He said yes. I then asked him if there was anybody else with him. He said yes. . . . I asked him if he fired a gun or shot the man at the State Line Pizza. He said yes."

Prior to this conversation appellant had been administered a small dose of sedative. Thereafter, the bullet was removed from the appellant by a doctor who treated him. Officer Herkey was present when the bullet was removed and was handed the bullet after its removal. At approximately 10:30 a.m. on August 14, 1962, Police Officer Richard Dearing spoke with the appellant. Appellant told Officer Dearing that he had used a car and a gun. Later on the same day the appellant told the same officer that it was one James Shaffer who was with him at the shooting scene. James Shaffer was originally a co-defendant in this case. Officer Dearing further testified that he again saw the appellant on August 15, 1962,

at approximately 11:00 a.m. shortly after appellant had been given a sedative. During this conversation appellant gave another statement implicating himself. Another officer talked with the appellant later on that same day when appellant made another incriminating statement. At no time prior to any of these conversations, in which the appellant confessed this guilt or made otherwise incriminating statements, was the appellant advised of his constitutional rights.

Appellant was first arrested on August 14, 1962, by Officer William Blaemire, while appellant was still in the X-Ray room, and was at that time placed in custody by placing a guard outside his hospital room. The record shows that at some time his arms were strapped down, however, it is not shown whether this measure was done to prevent his escape or for his own protection. Appellant was detained in the hospital because of the seriousness of his injuries until September 12, 1962, when he was taken to the Hammond Police Station and subsequently taken before a magistrate for arraignment.

At the trial, the revolver used by the State Line Pizza employee who was killed, was admitted into evidence. Also, over appellant's objections, the bullet removed from his body was admitted into evidence. An expert witness testified that in his opinion the bullet was fired from the revolver used by the victim. Also, testimony regarding the six statements, conversation by the appellant to the various officers incriminating himself, were admitted in evidence over appellant's objections.

We shall first consider appellant's contention that certain incriminating statements and confessions, made by him, were improperly admitted into evidence by the trial court when several police officers testified thereto. Appellant urges that these statements were involuntary and therefore inadmissible because:

  (a) The statements were extracted during a period of illegal detention;
  (b) The statements were extracted before the appellant had been advised as to any of his constitutional rights;

(c) The statements were extracted from the appellant while he was without the assistance of counsel;

(d) The statements were extracted while the appellant was in great physical pain;

(e) The statements were extracted while the appellant was under the influence of narcotic drugs.

We must first point out that this case arose in 1962, prior to the decision *Miranda* v. *Arizona* (1966), 384 U. S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, wherein the Supreme Court of the United States held in part that absent an intelligent waiver of the constitutional rights involved statements, merely incriminating or in the nature of a confession, obtained from a person during custodial interrogation, are inadmissible as evidence as is the fruit of such statements, unless, procedural safeguards were used to eliminate any compulsive atmosphere inherent in such interrogations. The requirements set out in *Miranda* relating to the custodial interrogation of the criminally accused, to provide the necessary procedural safeguards are:

(1) The person must be warned that he has a right to remain silent;

(2) The person must be warned that any statements he does make may be used as evidence against him;

(3) The person must be informed that he has a right to the presence of an attorney, either retained or appointed;

(4) If the person indicates at any stage of the process he wishes to consult with an attorney before speaking there can be no questioning until the request is granted;

(5) If the person indicates at any stage of the process that he wishes not to be further interrogated, the interrogation must stop.

Although, we do not necessarily agree with the idea that something determined to be unconstitutional today was not equally unconstitutional yesterday, the Supreme Court of the United States has nevertheless held that the decision in both *Escobedo* v. *Illinois* (1964), 378 U. S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758, and *Miranda* v. *Arizona, supra,* have a prospective appli-

cation only. In *Johnson* v. *New Jersey* (1966), 384 U. S. 719, 16 L. Ed. 2d 882, 86 S. Ct. 1772, the Supreme Court of the United States said:

". . . we conclude that *Escobedo* and *Miranda* should apply only to cases commenced after those decisions were announced." (384 U. S. at 733)

These dates are 1964 and 1966 respectively, thus, the appellant does not have the benefit of these decisions since his case occurred prior thereto. We are therefore compelled to consider the law as it existed before the United States Supreme Court changed it in *Escobedo* and *Miranda*.

The Supreme Court of the United States in *Haynes* v. *Washington* (1963), 373 U. S. 503, 10 L. Ed. 2d 513, 83 S. C. 1336, the Court stated:

" 'In short, the true test of admissibility is that the confession is made freely, voluntarily and without compulsion *or inducement of any sort.*' " [Emphasis added, 373 U. S. at 513]

In *Nacoff* v. *State* (1971), 256 Ind. 97, 267 N. E. 2d 165, 167, we made the following statement of the constitutional standard governing the admissibility of confessions prior to *Miranda*.

"The question is whether, looking at all the circumstances, the confession was free and voluntary, and not induced by and violence, threats, promises, or other improper influence. *Brady* v. *United States* (1970), 397 U. S. 742, 90 S. Ct. 1463, 25 L. Ed. 2d 747; *Haynes* v. *State of Washington* (1963), 373 U. S. 503, 83 S. Ct. 1336, 10 L. Ed. 2d 513; *Rogers* v. *Richmond* (1961), 365 U. S. 534, 81 S. Ct. 735, 5 L. Ed. 2d 760; *Bram* v. *United States* (1897), 168 U. S. 532, 18 S. Ct. 183, 42 L. Ed. 568; *Hall* v. *State* (Ind., 1971), 266 N. E. 2d 16; S*mith* v. *State* (1969), Ind., 249 N. E. 2d 493; *Sparks* v. *State* (1967), 248 Ind. 429, 229 N. E. 2d 642." [267 N. E. 2d 167]

In light of this summary of the law governing our consideration of apellant's case we shall proceed to consider the merit of his contentions.

For purpose of the discussion here we shall refer to all the allegedly prejudicial statements made by the appellant as "confessions," since *Burns Ind. Stat. Ann.* sec. 9-1638 provides that "the term 'confession' means any confession of guilt of any criminal offense or any self-incriminating statement made or given orally or in writing. [Acts 1969, ch. 312, sec. 5, p. 1293]

First, appellant urges that the confessions were made during a period of illegal detention. With this we cannot agree. The record clearly shows that the reason appellant was detained in the hospital was the seriousness of his injuries. Under these circumstances the statutory provision providing that a person arrested on a preliminary charge has a right to an immediate hearing is necessarily waived for the benefit of the injured accused. While the illegal detention of an accused is a factor to be considered within the totality of the circumstances when determining the voluntariness of a confession, *Watts* v. *Indiana* (1949), 338 U. S. 49, there was no illegal detention regarding appellant's delay in the instant case.

The incriminating statements of the appellant in this case were made voluntarily in explanation of how he happened to be shot and injured, after someone in his home had called the police, for aid in getting treatment for him. There appears to have been no badgering or threats against the appellant in this case to compel the statements he made. Statements made to the officer at this time were at a time when he was under no drugs, apparently only in pain and we may speculate consciously in fear of dying. The court held a hearing on the admissibility of the statements and found they were voluntary. We have no right to substitute our feeling or reweigh the facts found by the court. Statements made by appellant after he was taken from his home, and at a time when he was probably under some sedation, were merely corroborative of his original statements made

voluntarily when the police officers arrived at his home on a call to assist him. It appears to us that the trial court ruled in accordance with the constitutional standard as it existed at the time of the trial. The court did not commit any error in view of the state of the law as it was then fixed by the United States Supreme Court which it later saw fit to change in doing so did not see fit to make it applicable to prior cases.

Finally, appellant urges that the bullet taken from his body was improperly admitted as evidence against him. First, appellant urges that the bullet was the result of an illegal ■■ search and seizure. Appellant has put forth no argument nor cited any authority for his position in this regard and has thereby waived this issue on appeal, pursuant to Appellate Rule 8.3(A) (7). We give it no further consideration. Second, appellant urges that the admission of the bullet in evidence was improper because such evidence was a violation of his constitutional privilege against self-incrimination. We find no merit to appellant's contention as the privilege extends only to evidence of a testimonial nature. In this regard the Supreme Court of the United States in *Schmerber* v. *California* (1966), 384 U. S. 757, 86 S. Ct. 1826, 16 L. Ed. 2d 908, stated:

> "We hold that the privilege protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature . . ." (384 U. S. at 761)

Clearly, a bullet does not come within the narrow scope of the privilege as defined by the United States Supreme Court. Third, appellant urges that the bullet was improperly admitted in evidence because it was obtained as the result of a violation of the physician-patient privilege. We find no merit in appellant's urging and make the following observation. *Burns Ind. Stat. Ann.*, sec. 2-1714, in pertinent part provides as follows:

> "Who are incompetent. The following persons shall not be competent witnesses:"
>
> * * *

"Fourth. Physicians, as to matter communicated to them, as such, by patients, in the course of their professional business, or advice given in such cases."

[Acts 1881 (Spec. Sess.), ch. 38, sec. 275, p. 240] First, regarding the statute:

"The effect of the statute is to prohibit the ascertainment of truth in many controversies, and because of this result, and the rule that statutes in derogation of the common law, as this is, will be strictly construed, its prohibitions are not to be extended by implication. . . ."

*Alder* v. *State* (1958), 239 Ind. 68 at 75, 154 N. E. 2d 716. The facts of the instant case do not provide a setting for application of the statutory proscription of a "confidential" communication between a physician and his patient for the following reasons. First, the statute is limited in its wording to only "physician" who are called upon to testify as "witnesses". In this case it was not the physicians who testified but a third person, a policeman. *General Acc. Fire & Life Assurance Co.* v. *Tibbs* (1936), 102 Ind. App. 262, 2 N. E. 2d 229. The privilege naturally extends to those acting as an agent or arm of the physician when he is in consultation with or is treating a patient. *Doss* v. *State* (1971), 256 Ind. 174, 267 N. E. 2d 385. It does not however, by its "wording" prohibit third parties from testifying who are not connected with the physician under a physician-patient relationship. *Doss* v. *State, supra.* Without doubt matters which take place under the observation of third parties, as in the case of husband and wife or attorney and client are not privileged and do not make such third parties incompetent witnesses. In the instant case the police officer, to whom the bullet was given when it was removed from the appellant, had a right if not a duty to be present in the doorway to the operating room when the bullet was being removed from the appellant. Under these circumstances, the officer was properly permitted to testify regarding how he obtained the bullet and further there was no

breach of the physician-patient privilege when the physician handed the bullet to the officer who witnessed its removal. Second, in the instant case there was no "confidential" communication between the physician and his patient. Prior to the removal of the bullet from his body, appellant had admitted participating in the shooting at the State Line Pizza. Further, the State Line Pizza employee stated before he died that he had wounded his assailant. Several persons saw the appellant in his condition when he arrived at the hospital, wounded and bleeding profusely. Appellant orally consented to the removal of the bullet. Under these circumstances the physician who turned the bullet over to the police officer, in doing so, did not disclose anything that was not already known concerning the appellant's condition.

We should keep in mind that the objective of the privilege in such cases is namely to inspire full and complete disclosure of knowledge pertinent and necessary to a trustful and proper relationship in such cases. Where that objective is not served and the privilege is used to conceal the commission of a crime, it has no social value and serves no public purpose but in fact is turned into a shield to the criminal and the commission of the crime. We have held that a physician may testify to being consulted and even aiding in the performance of an illegal abortion in this state. *Seifert* v. *State* (1903), 160 Ind. 464, 67 N. E. 100. It has been stated as a general proposition that professional communications are not privileged when made for an unlawful purpose having for their objective the commission of a crime. *Seifert* v. *State, supra.*

It is likewise held that attorney and client may not conspire to commit a crime and then contend that the communications between them as to the conspiracy is privileged. *Clark* v. *United States* (1932), 289 U. S. 1, 77 L. Ed. 993, 53 S. Ct. 465. A fraudulent intent as well as criminality of purpose may well remove the veil of secrecy from communi-

cations between attorney and client. Where an attorney is consulted for the purpose of obtaining advice as to the perpetration of a fraud, or in aid or furtherance thereof the communications made to him by one having such purpose in view are not, according to most authorities, privileged. *United States* v. *Bob* (1939), 106 F. 2d 37, writ of certiorari denied in 308 U. S. 589, 84 L. Ed 493, 60 S. Ct. 115.

Although the privilege between husband and wife is stated in absolute terms in the Indiana statute this court has said it does not apply in all cases, namely in an assault and battery between husband and wife. *Doolittle* v. *State* (1883), 93 Ind. 272.

Appellant relies on this court's decision in *Alder* v. *State* (1958), 239 Ind. 68, 154 N. E. 2d 716 in his contentions. The facts in the *Alder* case are distinguishable from those in the instant case, and it is thus not controlling here. First, in the *Alder* case it was the physician who took the blood sample and *who testified*. In the instant case a third party observer testified concerning the bullet. Also, in the *Alder* case, the taking of the sample of blood disclosed a very important fact previously unknown about the patients condition. In the instant case the removal of the bullet disclosed nothing previously unknown. Also, unlike the *Alder* case the appellant here consented to the removal of the bullet. In the instant case the evidence that the appellant was shot by the deceased victim might possibly be considered favorable to the appellant's case. For these reasons the *Alder* decision is not controlling here. We also note that under similar circumstances the *Alder* case was distinguished in *Doss* v. *State* (1971), 256 Ind. 174, 267 N. E. 2d 385, where we held there was no breach of the physician-patient privilege.

This case falls within the principles enunciated in the above cases interpretating the statute on privileged communications. There was nothing confidential revealed in this case that was

not disclosed to third parties. The statute may not be used when its objective is not served but rather would be used as a shield for criminal activity. In such cases it has no public policy or social value.

Judgement of the trial court is affirmed.

All judges concur.

NOTE.—Reported in 274 N. E. 2d 267.