748 P.2d 777

**STATE of Arizona, Appellee,**

v.

**Terrance Lenard WALTERS, Appellant.**

**Nos. 1 CA–CR 10976, 1 CA–CR 10977 (Consolidated).**

Court of Appeals of Arizona,
Division 1, Department D.

Nov. 3, 1987.

Redesignated as Opinion and
Publication Ordered
Dec. 15, 1987.

As Corrected Dec. 15, 1987.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel Crim. Div. and Joseph T. Maziarz, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa Co. Public Defender by Carol A. Carrigan, Deputy Public Defender, Phoenix, for appellant.

## MEMORANDUM DECISION ■

FROEB, Presiding Judge.

Appellant appeals from his convictions of aggravated assault, one a class 6 felony and the other a class 5 felony, and the sentences imposed thereon. There are three issues on appeal: first, whether the trial court should have given *Willits* and "missing witness" instructions; second, whether the jury was incorrectly instructed on the weight to be given to the testimony of law enforcement officers; and third, whether appellant was entitled to a self-defense instruction. We conclude the jury was properly instructed and affirm.

## FACTS

The facts, in a light most favorable to sustaining the verdict, *State v. Olivas*, 119 Ariz. 22, 579 P.2d 60 (App.1978), are as follows. Two Phoenix police officers were advised of a family dispute at an apartment in Phoenix. The complainant, appellant's mother, told officers her son was in her apartment and had a butcher knife. After letting the officers into the apartment, they saw appellant lying on a couch. His hands were tucked between his knees. Officer Ulrich asked appellant to show his hands and appellant replied, "What for?" The officer told appellant about his mother's complaint and repeated his request that appellant show his hands. Appellant refused and the officer took hold of appellant's wrists and began to pull them. Appellant then struck the officer in the stomach with his clenched fist. The officer stepped back and appellant continued striking the officer. He was then subdued, arrested and charged with aggravated assault in violation of A.R.S. § 13–1204(A)(5), (B), a class 6 felony, bearing Cause No. CR–158502.

While incarcerated and awaiting trial on the above offense, appellant assaulted a jailer. Briefly, on the morning of appellant's court appearance, Detention Officer David Wilson entered a cell to ask appellant his name. Appellant displayed his identification and Wilson told him to step out of the cell. Appellant, now standing, called Wilson an "asshole" and started punching him. Wilson, after receiving numerous blows, "stunned" appellant with a "stun gun," a nonlethal weapon. Appellant was charged with aggravated assault, in violation of A.R.S. § 13–1204(A)(7), (B), a

class 5 felony, bearing Cause No. CR–160370. Additional facts will be discussed as necessary.

The two counts were consolidated for trial and the state alleged that any conviction arising out of the aggravated assault in Cause No. CR–158502 would be a prior conviction pursuant to *State v. Hannah*, 126 Ariz. 575, 617 P.2d 527 (1980). After the jury returned guilty verdicts, appellant was sentenced to a presumptive term of 1.5 years in Cause No. CR–158502 and an aggravated term of four years in Cause No. CR–160370, the sentences to run consecutively.[1]

## THE WILLITS AND MISSING WITNESS INSTRUCTIONS

Prior to trial, appellant moved to dismiss the charges in Cause No. CR–160370, on the grounds the state failed to preserve the identity of other inmates who were in or around appellant's cell at the time of the assault. Appellant relied on *State v. Escalante*, 153 Ariz. 55, 734 P.2d 597 (App. 1986); *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984); *State v. Mitchell*, 140 Ariz. 551, 683 P.2d 750 (App.1984); *Scales v. City Court*, 122 Ariz. 231, 594 P.2d 97 (1979); *State v. Willits*, 96 Ariz. 184, 393 P.2d 274 (1964) and *State v. Hannah*, 120 Ariz. 1, 583 P.2d 888 (1978). The trial court denied the motion. At the conclusion of the presentation of evidence at trial, appellant then requested a *Willits* and a "missing witness" instruction.[2] Appellant's position was that the state interviewed other officers but failed to interview or preserve the identity of inmate witnesses. The trial court found

the identities of the inmate witnesses were available to appellant and that appellant could have interviewed them. The trial court also noted that a *Willits* instruction was inappropriate because the state did not destroy or lose evidence.

On appeal, appellant asserts it was reversible error to refuse his *Willits* and missing witness instructions. The state contends appellant was not entitled to either instruction. Relying on *State v. Rivera*, 152 Ariz. 507, 733 P.2d 1090 (1987), the state contends it has no affirmative duty to gather evidence for the accused. The state argues appellant or his attorney could have discovered the identity of inmate witnesses and interviewed these witnesses, citing the trial court's findings in support thereof.

In reply, appellant insists the inmate witnesses were in the exclusive control of the state and that the state should have preserved the identity of these witnesses.[3]

In *State v. Willits*, 96 Ariz. 184, 393 P.2d 274, the defendant was convicted of attempting to explode dynamite in a dwelling house with intent to injure. Prior to trial, the package of explosives carried by defendant was turned over by the state to military officials at Davis–Monthan Air Force Base and destroyed. At trial, defendant argued that the dynamite cap was discharged accidentally through static, stray electricity or radio, and that the dynamite was in such condition that it could not be exploded. He testified that he had previously drained the nitroglycerine from the dynamite. Defendant also argued that because the dynamite was destroyed by the

---

1. The record indicates appellant's sentence was "corrected" to 2.5 years in Cause No. CR–160370 to conform to the trial court's previous minute entry entered December 11, 1986. Two and one-half years is the maximum term for a class 5 felony with no priors. Because the change favors appellant and the state did not appeal, we will not disturb the sentence. *State v. Tyree*, 109 Ariz. 259, 508 P.2d 335 (1973).

2. The missing witness instruction reads:
   It was peculiarly within the power of the government to produce _____, who could have given material testimony on an issue in the case. The government's failure to call

_____ may give rise to an inference that his testimony would be unfavorable to it. You should bear in mind that the law does not impose on a defendant in a criminal case the burden or duty of calling any witness or producing any evidence.

3. At the outset, it should be noted that appellant erroneously claims the state failed to preserve the identity of inmate witnesses who were in the cell at the time of the assault. The record indicates the state did preserve the identity of one inmate witness and, in fact, interviewed this witness.

state, he was entitled to what has become known as the *"Willits"* instruction:

> If you find that the plaintiff, the State of Arizona, has destroyed, caused to be destroyed, or allowed to be destroyed any evidence whose contents or quality are in issue, you may infer that the true fact is against their interest.

*Willits,* 96 Ariz. at 187, 393 P.2d at 276. The supreme court held in *Willits* that it was reversible error not to give this requested instruction. The dynamite itself was in issue and the state's destruction of it deprived defendant of that very defense.

> Had the instruction been given, the jury would have been in the position of weighing the [state's] explanation and, if they believed it was not adequate, an inference unfavorable to the prosecution could have been drawn. *This in itself could create a reasonable doubt as to the defendant's guilt.*

(Emphasis in original.) *Willits,* 96 Ariz. at 191, 393 P.2d at 279. To be entitled to a *Willits* instruction, a defendant does not have to prove that evidence destroyed by the state would have conclusively established his defense. *State v. Hunter,* 136 Ariz. 45, 51, 664 P.2d 195, 201 (1983). The defendant need only show that if the evidence had not been destroyed, it might have tended to exonerate him. *Hunter,* 136 Ariz. at 51, 664 P.2d at 201, quoting *State v. Garrison,* 120 Ariz. 255, 259, 585 P.2d 563, 567 (1978). Generally, the state does not have a duty to seek out and gain possession of potentially exculpatory evidence for the defense, although it does have a duty to preserve evidence that is obvious, material and reasonably within its grasp. *State v. Tyler,* 149 Ariz. 312, 317, 718 P.2d 214, 219 (1986). However, as noted in *State v. Turrubiates,* 25 Ariz.App. 234, 240, 542 P.2d 427, 443 (1975), "[w]e will not, by judicial fiat, require the police to expend valuable time searching for exculpating evidence when they have developed a sufficient case against an accused." *See also State v. Rivera,* 152 Ariz. 507, 511, 733 P.2d 1090, 1094 (1987) (The state generally does not have an affirmative duty to search out and gain possession of potentially exculpatory evidence).

In the present case, the trial court found that appellant could have secured the identity of these inmate witnesses in various ways. These findings are not challenged on appeal. We note that appellant made absolutely no showing that these witnesses would have provided exculpatory evidence. Additionally, it is clear there was no suppression or destruction of evidence in this case. It is equally clear these inmate witnesses were not in the exclusive control of the state. Therefore, failure of the state to obtain the identity of and/or interview these witnesses did not entitle appellant to a *Willits* or missing person instruction.

The state interviewed seven witnesses, and may have reasonably concluded that interviewing additional witnesses would be cumulative. The state had no duty to preserve the identity of cumulative witnesses. There is nothing in the record to suggest that the state had reason to believe, or should have had reason to believe, these other witnesses possessed any information inconsistent with the information obtained from the seven witnesses interviewed.

In short, appellant made no showing, and it does not appear from the record, that the inmate witnesses meet the standard of constitutional materiality necessary to impose a duty on the state to preserve evidence. It is also clear there were "other reasonably available means" for defendant to obtain the identity of the inmate witnesses.

> [E]vidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

*California v. Trombetta,* 467 U.S. 479, 489, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413, 422 (1984). The trial court did not abuse its discretion in refusing the proffered instructions.

### JURY INSTRUCTIONS ON THE WEIGHT TO BE GIVEN LAW ENFORCEMENT OFFICERS' TESTIMONY

Appellant contends it was error for the trial court to refuse two proffered instruc-

tions, numbered 5 and 6 respectively. Instruction No. 5 states:

> In weighing the testimony of a law enforcement officer, you should apply the same standards as you apply to the testimony of any other witness. The fact that a witness is a law enforcement officer does not make his testimony any more or less credible than the testimony of any other witness.

Instruction No. 6 states:

> In considering the weight to be given to the testimony of a witness, you may consider, if you wish, whether the evidence indicates that the witness complied with the ordinary rules and customs of his or her profession. If the testimony of a witness indicates a departure from accepted procedures, and the witness is unable to explain this departure to your satisfaction, you may consider this in determining what weight to give to his or her testimony.

Specifically, appellant contends he was prejudiced by the failure to so instruct because all the state's witnesses and the victims were law enforcement officers. He contends the error was fundamental. Furthermore, he claims the error was aggravated when the trial court gave the following instruction:

> The Rules of Evidence ordinarily do not permit witnesses to testify as to opinions or conclusions. An exception to this rule exists as to those who we call expert witnesses. Witnesses who by education and experience have become experienced in any art, science, profession or calling may state an opinion as to relevant and material matters in which they profess to be an expert and may also state their reasons for the opinion.
>
> You should consider each expert opinion received in evidence in this case and give it the weight as you may think it deserves. If you should decide that the opinion of an expert witness is not based on sufficient education and experience or if you should conclude the reasons given for it in support of the opinion are not sound or that the opinion is outweighed by other evidence, you may disregard the opinion entirely.

The giving of this instruction, combined with the absence of his requested instructions, appellant argues, "led the jury to believe that all of the witnesses against [him] were expert witnesses ..." whose opinions were that appellant committed assault.

■ Appellant failed to make a timely or specific objection to the instructions of which he now complains. To preserve an objection to jury instructions, counsel must state "distinctly the matter to which he objects and the grounds of his objection." Rule 21.3, Arizona Rules of Criminal Procedure; *Rivera*, 152 Ariz. at 516, 733 P.2d at 1099. A general objection is insufficient to preserve the issue on appeal. *State v. Avila*, 147 Ariz. 330, 710 P.2d 440 (1985). Failure to distinctly object waives error unless it is fundamental. *State v. Edgar*, 126 Ariz. 206, 209, 613 P.2d 1262, 1265 (1980).

The instructions given by the trial court fairly represented the applicable law and/or covered the substance of the proffered instructions. Therefore, it was not fundamental error for the trial court to refuse the proffered instructions or to give the "expert witness" instruction.

■ Prior to trial, the jury panel was asked by the judge if anyone believed testimony from law enforcement officers was entitled to any greater weight. No juror gave an affirmative response. Additionally, the trial court gave the following instruction on the credibility of witnesses:

> You are the judges of the credibility of the witnesses and of the weight to be given to the testimony of each of them. In determining the weight to be given to the testimony of any of the witnesses, you may take into account their ability and opportunity to observe, their memory, their manner while testifying, any motive, interest, bias or prejudice they may have, any inconsistent statements they may have made, and the credibility of the that [sic] testimony considered in light of all the evidence in the case.

This instruction, which immediately preceded the "expert witness" instruction, ade-

quately covered the substance of appellant's requested instructions. Therefore, even if the issue was preserved on appeal, the trial court did not err in refusing appellant's instructions. *State v. Miller*, 135 Ariz. 8, 658 P.2d 808 (App.1982).

As to Instruction No. 6, it is well settled that an instruction should not be given unless it is reasonably and clearly supported by the evidence. *State v. Axley*, 132 Ariz. 383, 646 P.2d 268 (1982); *State v. Smith*, 113 Ariz. 298, 552 P.2d 1192 (1976). Officer Ulrich testified about the various methods of disarming a suspect. There was no evidence indicating he failed to comply with accepted procedures. Therefore, it was not necessary to give the requested instructions.

Finally, as to the expert witness instruction, Officer Wilson testified as to the training, procedures and experience involved in the use of a "stun device," and Officer Ulrich testified to his experience and training for the proper procedures to disarm a suspect. During cross-examination, defense counsel elicited testimony from Officer Ulrich as to his opinion, based upon his training and experience, whether appellant was under the influence of drugs. In light of this evidence, it was not error for the trial court to instruct on expert witnesses.

## SELF–DEFENSE INSTRUCTION

Appellant contends he was entitled to a self-defense instruction.[4] Relying on *State v. Hunter*, 142 Ariz. 88, 688 P.2d 980 (1984), appellant argues it was fundamental error for the trial court to refuse his proffered self-defense instruction. In *Hunter*, our supreme court held that to instruct a jury on self-defense pursuant to *Raji* 4.01 was fundamental error. Once a defendant presents evidence sufficient to raise reasonable doubt as to whether his conduct was justified, lack of justification becomes an element of the offense which the state must establish beyond a reasonable doubt,

*State v. Denny*, 119 Ariz. 131, 579 P.2d 1101 (1978); *State v. Garcia*, 114 Ariz. 317, 560 P.2d 1224 (1977), and the jury must be so instructed. *Hunter*, 142 Ariz. at 90, 688 P.2d at 982. Therefore, if appellant was entitled to a self-defense instruction, it was fundamental error for the trial court to refuse to so instruct.

The trial court specifically found that appellant failed to offer "any evidence that he acted in self-defense" and therefore refused the instruction. This finding is supported by the record and therefore it was not error to refuse the self-defense instruction.

A defendant is entitled to a self-defense instruction so long as there is the "slightest evidence of justification" for the act. *State v. Johnson*, 108 Ariz. 42, 492 P.2d 703 (1972). It has long been the law that if the evidence, whether brought out by the state or by the defense, is insufficient to raise a reasonable doubt as to whether a defendant acted in self-defense, any instruction on that issue is properly refused. *Walker v. State*, 52 Ariz. 480, 83 P.2d 994 (1938). The law in Arizona regarding self-defense is well established. A self-defense instruction must be given if the defendant demonstrates that: (1) he reasonably believed he was in immediate physical danger; (2) he acted solely because of his belief; and (3) he used no more force than appeared reasonably necessary under the circumstances. *State v. Noriega*, 142 Ariz. 474, 482, 690 P.2d 775, 783 (1984). In most cases, the defendant's own testimony raises the inference of self-defense. *See Everett v. State*, 88 Ariz. 293, 298, 356 P.2d 394, 398 (1960).

> Moreover, a defendant is entitled to a self-defense instruction 'whenever there is the slightest evidence of justification for the defensive act.' *State v. Bojorquez*, 138 Ariz. 495, 497, 675 P.2d 1314, 1316 (1984). (Cites omitted.) The 'slightest evidence' is that evidence 'tending to prove a hostile demonstration, which may be reasonably regarded as placing the accused apparently in imminent danger

---

**4.** The trial court modified appellant's requested instruction and it was given to the jury as: "The state's burden to prove beyond a reasonable doubt that the defendant committed the crime

goes to the whole case, including a claim that the defendant's reaction to Officer Ulrich was a reaction to the use of excessive force."

of losing [his] life or sustaining great bodily harm....' *State v. Wallace,* 83 Ariz. 220, 223, 319 P.2d 529, 531 (1957). *State v. Plew,* 150 Ariz. 75, 77, 722 P.2d 243, 245 (1986). Unless these elements appear in the evidence in an appropriate case, the plea of self-defense is not justified, and it is not error for the court to refuse to instruct upon that issue.

██ An examination of the elements of self-defense and of the record reveals that appellant's claim is without merit. As noted, appellant did not testify nor did he present any evidence. He relies solely on the cross-examination of the state's witnesses to support his assertion that he presented sufficient evidence to raise reasonable doubt as to whether his conduct was justified. Appellant's position is not supported by the record. The uncontradicted evidence was that after appellant refused to show his hands to Officer Ulrich, the officer took hold of appellant's wrists in order to extract them from between his legs. At this point, appellant punched the officer in the stomach and began repeatedly inflicting blows. No reasonable person could infer from this evidence that appellant was in danger of losing his life or sustaining great bodily harm and that therefore the use of this degree of force was justified.

As to Officer Wilson, the uncontroverted evidence is that after appellant showed his identification card and stood up, appellant called the officer an "asshole" and began beating on the officer. No reasonable juror could infer from this evidence that appellant's conduct was justified. In short, defendant failed to present the quantum of evidence necessary to entitle him to a self-defense instruction.

For all of the foregoing reasons, the convictions and sentences imposed are affirmed.

HAIRE, C.J., and EUBANK, J., concur.