IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | 2 CA-CR 2012-0124 |
| | ) | DEPARTMENT B |
| Appellee, | ) | |
| | ) | O P I N I O N |
| v. | ) | |
| | ) | |
| HEULON COLSTON BROWN, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR20103108002

Honorable Richard S. Fields, Judge

AFFIRMED

Thomas C. Horne, Arizona Attorney General
  By Joseph T. Maziarz and Joseph L. Parkhurst                    Tucson
                                                        Attorneys for Appellee


Barton & Storts, P.C.
  By Brick P. Storts, III                                        Tucson
                                                        Attorneys for Appellant


E S P I N O S A, Judge.

¶1        After a jury trial, appellant Heulon Brown was convicted of first-degree felony murder, first-degree burglary, four counts of attempted armed robbery, and five counts of aggravated assault. He was sentenced to concurrent prison terms, the longest being life with the possibility of release after twenty-five years. On appeal, he argues the trial court erred by failing to suppress his pretrial statements and failing to give certain jury instructions. He also contends Arizona's felony-murder statute is unconstitutional. Finding no error, we affirm.

## Factual and Procedural Background

¶2        "We view the facts in the light most favorable to sustaining the convictions." *State v. Robles*, 213 Ariz. 268, ¶ 2, 141 P.3d 748, 750 (App. 2006). One evening in August 2010, four armed, masked men, including Brown, went to the door of an apartment and a fifth man, E.V., who was not masked, was forced to enter the apartment at gunpoint ahead of them. Immediately after opening the door, E.V., who was known to the apartment's occupants, dropped to the floor, placed his hands on his head, and curled into a ball while the gunmen ordered the occupants to "get on the ground." One of those occupants, J.J., had a gun and shot at the masked men, killing Michael White and injuring Brown. During the exchange, J.J. and A.B., a minor who was in the apartment, also were shot and injured.

¶3        At trial, Brown's defense was that he, like E.V., had been forced to participate in the home invasion. He was convicted and sentenced as described above

2

and now appeals. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A).

## Suppression of Statements

¶4      Brown argues the trial court erred by not suppressing statements he had made to police while he was hospitalized after surgery immediately following the incident. We review the denial of a motion to suppress evidence for an abuse of discretion. *See State v. Peterson*, 228 Ariz. 405, ¶ 6, 267 P.3d 1197, 1199 (App. 2011). In our review, we look only to the evidence presented at the suppression hearing and view it in the light most favorable to sustaining the court's ruling*, see State v. Gay*, 214 Ariz. 214, ¶ 4, 150 P.3d 787, 790 (App. 2007), deferring to the court's determination of facts and witness credibility but reviewing *de novo* its legal conclusions, *see State v. Gonzalez-Gutierrez*, 187 Ariz. 116, 118, 927 P.2d 776, 778 (1996).

¶5      Following the home invasion, Brown, who had been shot in the chest, was taken to Tucson's University Medical Center where he underwent emergency surgery. The same day, approximately six hours after the surgery, police detectives questioned him about the incident (the August 26 interview). At the beginning of the interview, Detective Diaz informed Brown that he was being detained and advised him of his rights pursuant to *Miranda*,[1] after which Brown said, "I'll answer your questions." Although Brown had been given medication, Detective Cassel noted that the conversation was "normal" and "coherent," and "nothing . . . was limiting [Brown's] ability to

---

[1]*Miranda v. Arizona*, 384 U.S. 436 (1966).

3

communicate." Diaz similarly noted that Brown was lucid and able to engage in active conversation. At the conclusion of the interview, Brown was informed he was under arrest.

¶6      At approximately two o'clock the following morning, Diaz returned to the hospital and continued questioning Brown (the August 27 interview). The detective asked, "Obviously, you remember your rights from yesterday and you still understand them, we're still good with that? Yeah?" Brown responded, "Ah-[h]ah," and proceeded to answer questions. At no point during either interview did Brown invoke his right to remain silent or his right to counsel. Finally, seven days later, while still hospitalized, Brown initiated a conversation with Diaz (the September 3 interview). The detective did not remind him of his rights, and Brown made additional statements. Before trial, Brown moved to suppress all of his statements on the ground he had not given them voluntarily. The trial court denied the motion after conducting an evidentiary hearing, and statements from the three interviews were introduced at trial.

Voluntariness

¶7      On appeal, Brown maintains that his statements were involuntary and should have been suppressed. We will not overturn a trial court's determination of voluntariness absent clear error. *See State v. Graham*, 135 Ariz. 209, 211, 660 P.2d 460, 462 (1983). Confessions are presumed to be involuntary, and the state has the burden of demonstrating voluntariness by a preponderance of the evidence. *State v. Tapia*, 159 Ariz. 284, 287, 767 P.2d 5, 8 (1988). In considering whether a confession is voluntary, a

4

court must determine whether, under the totality of the circumstances, the will of the defendant was overborne. *State v. Hall*, 120 Ariz. 454, 456, 586 P.2d 1266, 1268 (1978). A defendant's mental or physical condition is relevant to the inquiry, but generally is insufficient by itself to render a statement involuntary. *State v. Smith*, 193 Ariz. 452, ¶ 14, 974 P.2d 431, 436 (1999); *cf. Mincey v. Arizona*, 437 U.S. 385, 398-402 (1978) (confession involuntary where defendant seriously wounded, evidently confused, still in hospital's intensive care unit and encumbered by medical apparatus, complained of "unbearable" pain, asked for the interrogation to stop, and repeatedly lost consciousness).

¶8 Brown argues he "was not in a mental condition to comprehend the nature and import of the [*Miranda*] warning" he received. He asserts he "had been shot and was in critical condition and strongly medicated" and therefore the questioning was "coercive in nature, causing [his] statements to be . . . involuntary." But no evidence was introduced at the hearing to support the contention that he was strongly medicated, in critical condition, or that he did not understand what was happening.

¶9 Instead, although detectives observed that Brown was "hooked up to many monitors and . . . an IV," and that he appeared to be in pain, they testified he was "lucid" and able to engage in active conversation, his answers to their questions were coherent and responsive, and "nothing . . . was limiting his ability to communicate." Brown at one point requested pain medication, and the nurse informed him she would provide the medication as soon as the interview was over. Brown did not ask for the questioning to stop, nor did he repeat his request for pain medication.

¶10     The detectives made no promises or threats to Brown. And, after informing him of the nature of the questions they wanted to ask, about a minute into the encounter the detectives read him his rights, which he said he understood.[2] Brown agreed to continue answering questions, and did so for about an hour. Nothing in the recording of the interview or the suppression testimony indicated Brown's will had been overborne. The trial court reviewed and considered the audio recording of the interview when determining voluntariness, as have we, and it supports the court's ruling. Under these circumstances, we find no abuse of discretion in the court's finding that Brown's statements were voluntary. And because his arguments relating to the voluntariness of the statements given in the subsequent interviews hinge on a finding of involuntariness in the first, we need not address them.

¶11     Brown also maintains that because the statements were not suppressed, he was required "to testify in an effort to explain the[ir] content and discrepancies," which both violated his right to remain silent and "made him appear to be a liar and severely prejudiced his defense." He did not object on this basis below and we therefore review only for fundamental, prejudicial error. *See State v. Valverde*, 220 Ariz. 582, ¶ 12, 208 P.3d 233, 236 (2009). But he does not argue on appeal that the error is fundamental, and because we see no error, fundamental or otherwise, the argument is waived. *See State v.*

---

[2]Despite stating that "detectives read [Brown's] *Miranda* rights at the time of the first interview," counsel later asserts "there was no evidence on the record to suggest that [he] had ever been informed or made aware of his right to the assistance of counsel during the interview." The record belies that assertion.

6

*Moreno-Medrano*, 218 Ariz. 349, ¶ 17, 185 P.3d 135, 140 (App. 2008) (fundamental error argument waived on appeal); *see also Harrison v. United States*, 392 U.S. 219, 222 (1968) ("A defendant who chooses to testify waives his privilege against compulsory self-incrimination . . . and that waiver is no less effective or complete because the defendant may have been motivated to take the witness stand in the first place only by reason of the strength of the lawful evidence adduced against him.").

Right to Counsel and Timely Initial Appearance

¶12        Brown next contends the statements he made while hospitalized should have been suppressed because they were taken in violation of his Fifth and Sixth Amendment rights to counsel and a timely initial appearance.[3] He asserts these grounds for the first time on appeal; we therefore review for fundamental error. *Valverde*, 220 Ariz. 582, ¶ 12, 208 P.3d at 236; *see also State v. Lopez*, 217 Ariz. 433, ¶ 4, 175 P.3d 682, 683 (App. 2008) ("[A] general objection is insufficient to preserve an issue for appeal," and "an objection on one ground does not preserve the issue on another ground.").

¶13        Brown acknowledges that his right to counsel under the Sixth Amendment had not attached when he gave his statements. *See McNeil v. Wisconsin*, 501 U.S. 171,

---

[3] Brown also suggests he was deprived of due process in violation of the Fourteenth Amendment of the United States Constitution and article II, § 4 of the Arizona Constitution. Because he fails to make any substantial argument to support this claim, however, it is abandoned. *See State v. Nirschel*, 155 Ariz. 206, 208, 745 P.2d 953, 955 (1987) ("Failure to argue a claim constitutes abandonment and waiver of that issue.").

7

175 (1991) (Sixth Amendment right to counsel does not attach until initiation of adversary judicial criminal proceedings, "'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment'"), *quoting United States v. Gouveia*, 467 U.S. 180, 188 (1984). He contends, however, that under Rule 6.1(a), Ariz. R. Crim. P., he had a right to consult with counsel "as soon as feasible after [being] taken into custody," (emphasis omitted) and that this right was denied.

¶14 Brown is correct that he had a right to consult with counsel—indeed, Detective Diaz informed him of the right before beginning the August 26 interview and confirmed his understanding before the August 27 interview. But Brown waived that right by failing to invoke it. *See State v. Eastlack*, 180 Ariz. 243, 250-51, 883 P.2d 999, 1006-07 (1994) (suspect must clearly invoke right to counsel). Accordingly, the trial court did not commit fundamental error by failing to suppress his statements on this ground.

¶15 Brown also argues that he was denied his right to a timely initial appearance, which in turn prevented the attachment of his Sixth Amendment right to counsel. Rule 4.1(a), Ariz. R. Crim. P., provides that an arrested person must be brought before a magistrate "without unnecessary delay" and that if this initial appearance does not occur within twenty-four hours after arrest, the person must be released. The comment to the 2007 amendment of Rule 4.1(a) explains that "[t]his provision defines the applicable standard of promptness as without unreasonable delay and in no event more than 24 hours after arrest." The state argues that the twenty-four hour rule was

8

"impracticable" and there was no Rule 4.1 violation because the delay in bringing Brown before a magistrate was due to his hospitalization—thus, not "unnecessary"—and he was given his initial appearance the same day he was released from the hospital.[4]

¶16      The parties cite no Arizona authority, nor do we find any, addressing whether a defendant's hospitalization excuses delay in providing him or her with an initial appearance.  We find guidance, however, in decisions from other jurisdictions holding that delay arising from a need to provide the accused with medical treatment is excusable under their respective rules requiring an initial appearance without unnecessary delay.  *See, e.g.*, *United States v. George*, 987 F.2d 1428, 1431 (9th Cir. 1993) (eleven-day delay between arrest and arraignment caused by medical necessity did not violate federal rule requiring arraignment "without unnecessary delay"); *In re Walker*, 518 P.2d 1129, 1137-38 (Cal. 1974) (rule requiring initial appearance within two days of arrest not violated by eleven-day delay caused by defendant's hospitalization); *Green v. State*, 274 N.E.2d 267, 271 (Ind. 1971) (no illegal detention during injured arrestee's hospitalization to treat gunshot wounds; "right to an immediate hearing is necessarily waived for the

---

[4]Even had Brown's detention been unlawful, his statements would not necessarily be subject to suppression.  Arizona has rejected a rule that statements obtained during a delay in providing an initial appearance must automatically be excluded from evidence. *State v. Jordan*, 83 Ariz. 248, 256, 320 P.2d 446, 451 (1958).  Instead, such statements must be suppressed only if they were involuntary.  *State v. Sheffield*, 97 Ariz. 61, 64-65, 396 P.2d 828, 830 (1964); *Hightower v. State*, 62 Ariz. 351, 357, 158 P.2d 156, 158 (1945).  As discussed above, Brown's statements were voluntary.  We note, however, that several of these cases were decided before the exclusionary rule had been made applicable to the states.  *See Mapp v. Ohio*, 367 U.S. 643, 655 (1961) (exclusionary rule binding on states through the Fourteenth Amendment, which guarantees due process).

9

benefit of the injured accused"); *People v. Frazier*, 354 N.W.2d 332, 335-36 (Mich. Ct. App. 1984) (delay between arrest and arraignment occasioned by defendant's need for medical treatment "cannot be considered unnecessary"); *State v. Plouffe*, 646 P.2d 533, 534-35, 537 (Mont. 1982) (delay in bringing defendant before magistrate not unreasonable where defendant hospitalized after ingesting poison); *State v. LaPierre*, 188 A.2d 10, 18 (N.J. 1963) (deducting period of arrestees' hospitalization from time between arrest and appearance before magistrate).

¶17        We find the case of *In re Walker*, 518 P.2d 1129 (Cal. 1974), particularly persuasive.  There, the California Supreme Court held that a delay of eighteen days in bringing the defendant before a magistrate was not impermissible where the defendant was hospitalized for ten of those days to receive medical treatment for gunshot wounds he received while being arrested.  *Id.* at 1135-38.  Although § 825 of the California Penal Code requires that a defendant "must in all cases be taken before the magistrate without unnecessary delay, and, in any event, within two days after his arrest," the court concluded "it would be an unreasonable application of that section to require that a hospitalized defendant be taken before a magistrate until it was possible to do so without jeopardy to his health."  *Id.* at 1138.

¶18        We agree with the reasoning of the above decisions and conclude that because the necessity of Brown's medical treatment caused the delay in providing his initial appearance and he was brought before a magistrate within twenty-four hours of his release from the hospital, the delay was neither unnecessary nor unlawful.  Accordingly,

Brown has demonstrated no fundamental error, on this record, by the introduction at trial of his hospital statements.[5] *See United States v. Redlightning*, 624 F.3d 1090, 1109 (9th Cir. 2010) (where portion of delay due to government's conduct not unreasonable, no violation of prompt presentment requirement and district court did not err in refusing to suppress confession); *United States ex rel. Dove v. Thieret*, 693 F.Supp. 716, 722 (C.D. Ill. 1988) ("it is clear that the Sixth Amendment right to counsel does not accrue prior to the initiation of formal adversarial judicial proceedings simply because police interrogate an individual"); *Green*, 274 N.E.2d at 271 (statements made while in hospital admissible despite lack of counsel because "right to an immediate hearing is necessarily waived for the benefit of the injured accused"); *People v. Solorzano*, 944 N.Y.S.2d 154, 155 (N.Y. App. Div. 2012) ("To suppress a statement . . . there must be evidence that [presentment] delay was for the purpose of depriving the defendant of the right to counsel and obtaining an involuntary confession, and that this delay was strategically designed so that an accused could be questioned outside the presence of counsel.") (citation omitted); *see also People v. White*, 917 N.E.2d 1018, 1039-40 (Ill. App. Ct. 2009) (no attachment of Sixth Amendment right to counsel in absence of formal judicial proceeding even when arraignment delayed by eight days); *cf. In re Walker*, 518 P.2d at 1135-37 (upholding admission of defendant's statements obtained during ten-day hospital stay as voluntary

---

[5]Brown has not argued, nor did he present any evidence, that his initial appearance could have been conducted by means of modern technology while he was hospitalized. *See* Rule 1.6, Ariz. R. Crim. P. ("appearance may be made by the use of an interactive audiovisual system"). We therefore do not consider that issue.

and noting concomitant delay of initial appearance); *People v. Dove*, 498 N.E.2d 279, 284 (Ill. App. Ct. 1986) (Sixth Amendment right to counsel not violated where arraignment delayed by four days as a result of transportation and court holidays).

## Duress Instruction

¶19 Brown next argues the trial court erred by not giving the jury a duress instruction on count one, first-degree felony murder, and count four, aggravated assault, preventing him from presenting a defense in violation of his right to due process of law. The record does not reflect that he objected on this basis before the jury instructions were given. Instead, it appears Brown conceded a duress instruction was inappropriate on these charges. Moreover, in discussion with the court, he referred to federal cases he had listed without explanation in his requested jury instruction as standing for the proposition that "in the Ninth Circuit, [duress] instructions are applicable in a first degree murder case" and made a vague reference to "due process and equal protection rights." But asserting that an instruction is "applicable" in another jurisdiction does not constitute an argument that the United States or Arizona Constitution requires it. Nor did he state that refusing the instruction somehow violated his right to present a defense. Although it appears Brown did make this argument in a motion for new trial, "an untimely objection first raised in a motion for a new trial does not preserve an issue for appeal." *State v. Davis*, 226 Ariz. 97, ¶ 12, 244 P.3d 101, 105 (App. 2010). Accordingly, Brown has forfeited this argument on appeal absent fundamental, prejudicial error. *Valverde*, 220 Ariz. 582, ¶ 12, 208 P.3d at 236. Because he does not argue any error was fundamental,

12

and we see none, he has waived the argument on appeal. *See Moreno-Medrano*, 218 Ariz. 349, ¶ 17, 185 P.3d at 140; *see also* A.R.S. § 13-412(C) (duress defense unavailable for offenses involving homicide or serious physical injury); *State v. Fernandez*, 216 Ariz. 545, ¶ 32, 169 P.3d 641, 650 (App. 2007) (court will not ignore fundamental error if it finds it).

¶20        Brown similarly argues that § 13-412(C), which prohibits the duress defense for offenses involving homicide or serious physical injury, unconstitutionally impedes his right to present a defense. But he also made this argument for the first time in his motion for a new trial, and it therefore was untimely and did not preserve the issue for appeal. *See Davis*, 226 Ariz. 97, ¶ 12, 244 P.3d at 105. He has consequently forfeited the argument absent fundamental, prejudicial error. *Valverde*, 220 Ariz. 582, ¶ 12, 208 P.3d at 236. He again does not argue the alleged error was fundamental, and we see no error at all; the argument therefore is waived on appeal. *See Moreno-Medrano*, 218 Ariz. 349, ¶ 17, 185 P.3d at 140; *Fernandez*, 216 Ariz. 545, ¶ 32, 169 P.3d at 650; *see also State v. Berndt*, 138 Ariz. 41, 44, 672 P.2d 1311, 1314 (1983) (no error in refusing duress instruction for first-degree felony murder); *Clabourne v. Lewis*, 64 F.3d 1373, 1383 (9th Cir. 1995) (noting duress not available as defense for felony murder in Arizona).

**Voluntary Act Instruction**

¶21        Brown further maintains the trial court erred by refusing to give a "voluntary act" jury instruction, which denied his right to have a jury determine all elements of the crime necessary for criminal liability. As he acknowledges in his

13

opening brief, he did not make this argument below, and again, we review only for fundamental error. *Valverde*, 220 Ariz. 582, ¶ 12, 208 P.3d at 236. Such exists only in "those rare cases that involve 'error going to the foundation of the case, error that takes from the defendant a right essential to his defense, and error of such magnitude that the defendant could not possibly have received a fair trial.'" *State v. Henderson*, 210 Ariz. 561, ¶ 19, 115 P.3d 601, 607 (2005), *quoting State v. Hunter*, 142 Ariz. 88, 90, 688 P.2d 980, 982 (1984). The defendant must show both that the alleged error was fundamental and prejudicial. *Id.* ¶ 20.

¶22 Section 13-201, A.R.S., states that a "voluntary act" is a minimum requirement for criminal liability. Section 13-105(42), A.R.S., defines "voluntary act" as "a bodily movement performed consciously and as a result of effort and determination." Our supreme court has clarified that this definition encompasses actions that are not part of the "autonomic nervous system" or taken while "unconscious, asleep, under hypnosis, or during an epileptic fit." *State v. Lara*, 183 Ariz. 233, 234, 902 P.2d 1337, 1338 (1995). A voluntary-act instruction is appropriate only if reasonable evidence "support[s] a finding of a lack of a voluntary act." *State v. Moody*, 208 Ariz. 424, ¶ 201, 94 P.3d 1119, 1163 (2004); *State v. Almaguer*, 661 Ariz. Adv. Rep. 4, ¶ 19 (Ct. App. May 31, 2013).

¶23 Brown argues that "his inability to resist the threat to his life implicated his 'fight or flight' reflex, rendering his physical actions involuntary" within the meaning of §§ 13-105(42) and 13-201. He points to his testimony that he, K.C. Reaves, Ashton

14

Walker, and White were driving and one of the men told him they were going to a house to pick up someone to play basketball. According to Brown, E.V. was outside the house when they arrived. After they parked and got out of the car, Reaves aimed a gun at E.V., White told Brown to put on a mask, and White and Reaves started walking E.V. toward the door of the house. Brown testified he put on the mask because he "didn't really have a choice," and when he lagged behind, White pointed a gun at him and told him to get in front of E.V. Although Brown testified he felt he did not have a choice, a claim the jury obviously rejected, no evidence adduced at trial suggested that his actions were not the result of conscious effort and determination. Accordingly, the trial court did not err in declining the requested instruction.

**Missing Witness Instruction**

¶24 Brown also argues the trial court violated his constitutional rights to due process and to present a defense by refusing to give his requested "missing witness" jury instruction. Brown sought the instruction with respect to E.V., who apparently was forced to enter the apartment ahead of the armed home invaders and who did not testify or appear at trial despite the state's attempt to serve him with a subpoena.[6] We review for

---

[6]The requested instruction was based on *United States v. Bramble*, 680 F.2d 590, 591-92 (9th Cir. 1982), and read:

> [E.V.] is an alleged victim in Count III of the Indictment in the charges filed against the Defendant.
>
> The State had placed [E.V.] under subpoena for Defendant's trial. [E.V.] did not appear at Defendant's trial, pursuant to that subpoena, thus, is a missing witness. [E.V.] is not available to the Defendant, as he is a victim and the

15

a clear abuse of discretion a court's decision whether to give a requested instruction. *See State v. Walters*, 155 Ariz. 548, 551, 748 P.2d 777, 780 (App. 1987).

**¶25** To be entitled to a missing-witness instruction, a defendant must establish that the witness was in the exclusive control of the state and would have provided exculpatory evidence had he or she testified. *Walters*, 155 Ariz. at 551, 748 P.2d at 780; *see also United States v. Leal-Del Carmen*, 697 F.3d 964, 974-75 (9th Cir. 2012) (to obtain missing-witness instruction, party must show (1) witness is "peculiarly within the power of the other party" and (2) inference that missing witness will testify unfavorably to other party is natural and reasonable under the circumstances). Brown argues E.V. was "peculiarly within the power of the Pima County Attorney" because he was alleged to be a victim in the case, and victims are entitled by the Arizona Constitution "[t]o refuse an interview, deposition, or other discovery request by the defendant, the

---

Defendant is precluded from contacting a victim by Arizona law[.]

If it is peculiarly within the power of either the prosecution or the defense to produce a witness who could give material testimony on an issue in the case, failure to call that witness may give rise to an inference that his testimony would be unfavorable to that party. However, no such conclusion should be drawn by you with regard to a witness who is equally available to both parties, or where the witness's testimony would be merely cumulative.

The jury will always bear in mind that the law never imposes on a defendant in a criminal case the burden or duty of calling any witness or producing any evidence.

defendant's attorney, or other person acting on behalf of the defendant." Ariz. Const. art. II, § 2.1(A)(5).

¶26 At trial, the prosecutor informed the court that the state had issued a subpoena for E.V., but was unable to locate and serve him. Although E.V., as a victim, could have declined to be interviewed by Brown before trial, nothing about his status as a victim would have prevented Brown from calling him to testify in support of Brown's defense. *See State v. Riggs*, 189 Ariz. 327, 330, 942 P.2d 1159, 1162 (1997) (Victim's Bill of Rights does not permit victim to refuse to testify at trial). If Brown believed E.V.'s testimony would have been favorable to his defense, he could have listed E.V. as a witness and attempted to serve him with a subpoena. Had he done so, and had the state prevented E.V.'s appearance at trial, then E.V. would be under the state's control; however, such was not the case here. Instead, the state also took steps to secure E.V.'s attendance at trial—that these steps proved unsuccessful suggests the state had no greater control of E.V. than Brown. And, given Brown's ability to call E.V. and the state's own attempts to procure his presence, E.V.'s absence from trial does not permit a rational inference that he would have testified in Brown's favor.[7] Accordingly, a missing-witness instruction was not justified and the trial court did not err by refusing it.

---

[7]Nor does Brown establish that E.V.'s testimony would have corroborated his defense that he was forced by others to participate in the home invasion. Brown admitted he had never met E.V. prior to the break-in. Like the other home invaders, Brown was wearing a mask, and, although he testified he was pushed into the apartment at gunpoint, he also testified that E.V. was positioned before him. Brown's contention that E.V. would have been able to support his duress defense is therefore speculative and would not support giving the requested instruction.

**Constitutionality of Felony-Murder Statute**

¶27            Finally, Brown asserts that Arizona's felony-murder statute is unconstitutional because it allows a participating felon to be convicted of murder when he did not participate in the killing, which here was carried out by someone who was not participating in the underlying felony. Although Brown prefaces his argument in terms of due process and the right against excessive punishment, *see* U.S. Const. amends. VIII, XIV, he does not develop these arguments. Instead, he argues that Arizona's felony-murder doctrine should include an intent element greater than simply the mental state of the underlying felony. Our supreme court, however, has expressly upheld the constitutionality of Arizona's felony-murder statute in the face of similar challenges. *State v. McLoughlin*, 139 Ariz. 481, 485-86, 679 P.2d 504, 508-09 (1984); *accord State v. Herrera*, 176 Ariz. 21, 30, 859 P.2d 131, 140 (1993). We have no authority to overrule or disregard the decisions of our supreme court. *See Myers v. Reeb*, 190 Ariz. 341, 342, 947 P.2d 915, 916 (App. 1997). Further, citing cases from other jurisdictions, Brown argues the felony-murder doctrine should not apply when the killing is of an accomplice. But this court has already rejected this argument, holding that co-felons are nevertheless victims under the felony-murder statute. *See State v. Lopez*, 173 Ariz. 552, 555, 845 P.2d 478, 481 (App. 1992).

¶28            Brown also argues for the first time in his reply brief that his conviction of felony murder under an accomplice theory was fundamental error. Relying on *State v. Phillips*, 202 Ariz. 427, ¶¶ 37-39, 46 P.3d 1048, 1057 (2002), he asserts that "a

conviction for felony murder based upon accomplice liability deprives a defendant of his right to a determination of guilt of every element of the offense, and, that under an accomplice liability theory, the defendant must have intended to aid the specific crime for which he was an accomplice." Arguments raised for the first time in a reply brief, however, are waived, *see State v. Garcia*, 220 Ariz. 49, n.2, 202 P.3d 514, 517 n.2 (App. 2008), and we therefore do not consider this argument further.

**Disposition**

¶29        For the foregoing reasons, Brown's convictions and sentences are affirmed.


/s/ *Philip G. Espinosa*
PHILIP G. ESPINOSA, Judge

CONCURRING:


/s/ *Virginia C. Kelly*
VIRGINIA C. KELLY, Presiding Judge


/s/ *Peter J. Eckerstrom*
PETER J. ECKERSTROM, Judge