998 P.2d 1069

**STATE of Arizona, Appellee,**

v.

**John Richard GILFILLAN, Appellant.**

**No. 1 CA–CR 99–0069.**

Court of Appeals of Arizona, Division 1, Department C.

March 2, 2000.

Janet A. Napolitano, The Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, Consuelo M. Ohanesian, Assistant Attorney General, Phoenix, Attorneys for Appellee.

Dean W. Trebesch, Maricopa County Public Defender by Edward F. McGee, Deputy Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

EHRLICH, Judge.

¶ 1 John Richard Gilfillan ("defendant") appeals from his six felony convictions and the sentences imposed. For the reasons given below, we uphold the constitutionality of the Arizona Rape Shield Law, Arizona Revised Statutes ("A.R.S.") section 13–1421, and otherwise affirm.

### FACTS AND PROCEDURAL HISTORY

¶ 2 In June 1996, C.,[1] then 11 years old, lived with her grandmother in a trailer park in Phoenix. Because summer vacation had begun, C. was left alone in the trailer while her grandmother worked. On the morning of June 10, 1996, the defendant, who lived nearby, knocked on C.'s door. C. had known the defendant for two or three months, and, although he was 27 years old, C. thought that he was age 15 or 16. The defendant told C. that he had a lizard at his house that he wanted to show her, so C. let the defendant in the trailer while she went to get dressed.

¶ 3 In C.'s bedroom, the defendant approached C. from behind, placed a knife to her throat and pushed her down onto her bed. He bound C.'s wrists and ankles with cords from a video game, then gagged her with a brown sock to stop her from crying. The defendant touched C.'s vagina, performed oral sex on her, digitally penetrated her and attempted penile intercourse. When C. managed to remove the sock from her mouth, the defendant forced C. to perform oral sex on him. After he ejaculated, he wiped himself on the sock and threw it on the floor.

¶ 4 As C. struggled to get the cords off her wrists and ankles, the defendant retied the cords. Then, when C. began to cry, the defendant repeatedly punched her in the face and attempted to strangle her by wrapping another cord around her neck. As C. pleaded for her life, the defendant said that he would have to kill her and himself. Finally, though, the defendant stopped choking C., and he started to cry. He apologized, claiming that he had been taking medication. Before leaving, he told C. to lie about what had happened and tell her grandmother that she had been beaten by another girl.

¶ 5 After the defendant left, C. untied her hands and feet, and telephoned her grandmother, crying and saying that someone had beaten her. C.'s grandmother in turn immediately called the police and returned home.

¶ 6 A Phoenix police officer arrived within minutes and found C. crying and hysterical. After she told him what had happened, the officer conducted an initial examination of the scene, and found a knife on the bed and underwear on the floor. Paramedics and more officers arrived. As C. lay in an ambu-

---

1. To protect the privacy of juveniles, we use only the initial of the first name.

lance awaiting transport to a hospital, she saw the defendant standing nearby, and she identified him to the police as the one who had assaulted her. At the same time, the defendant approached an officer and said that he had some information about the incident. He told the officer that C. had come at him with a knife and that he had defended himself by hitting her in the face. He made no comment about having any sexual contact with C.

¶ 7 A detective went to the hospital and observed that C. had bruises and swelling on her face and ligature marks on her wrists, ankles and neck. The physician examining C. concluded that her physical condition was consistent with the history she had provided to him about the incident. Specimen and blood samples were taken from C.

¶ 8 A second detective processed the crime scene. She seized the brown sock, which was wet, the knife on C.'s bed, the cords next to the bed, some carpet samples with fresh blood on them, the blanket on C.'s bed, and C.'s underwear and shorts.

¶ 9 Meanwhile, the defendant was arrested and taken to a police station. He claimed that C. had invited him to see some drawings and lizard eggs. According to the defendant, once he was inside, C. told him that she was angry with him because he had alienated some of her friends from her, and she came at him with a butcher knife. The defendant said that he had grabbed the knife, struck C. in the face to protect himself, thrown the knife on the bed and left. Denying any sexual activity with C., the defendant consented to have blood and saliva samples taken.

¶ 10 DNA testing was performed on the blood samples given by the defendant and C., and on extracted semen and epithelial cells found on the brown sock. The epithelial fraction was consistent with cells from C.'s mouth, and the sperm fraction was consistent with cells from the defendant.

¶ 11 The defendant was indicted for kidnaping, aggravated assault, sexual conduct with a minor and attempted sexual conduct with a minor. The state moved to preclude evidence the defendant sought to introduce that C. allegedly had falsely accused a 13-year-old boy who lived in the trailer park of attempted rape. After conducting a hearing, the trial court granted the state's motion, finding that "the Defendant has not convinced the Court by clear and convincing evidence that [C.] made false accusations of sexual misconduct as to [K]."

¶ 12 At trial, the defendant testified and reiterated what he had told the police officers during his interview. He claimed that C. had assaulted him with a knife and that she had been injured in his attempt to protect himself. He denied that he had attacked C. with a knife or that he had bound and gagged her.

¶ 13 Two witnesses testified that C. had a reputation for lying and for violence. They said that C. had told others that she would "get even" with the defendant for taking her friends. C.'s grandmother also admitted that C. had a problem with lying and a reputation for violence.

¶ 14 The defendant was convicted as charged and sentenced to consecutive presumptive terms of imprisonment. He appealed, raising these issues:

A. Whether A.R.S. section 13-1421 is unconstitutional on its face and as applied to the defendant;

B. Whether the trial court abused its discretion when it excluded evidence that C. allegedly had falsely accused a boy of attempting to sexually assault her on a prior occasion;

C. Whether the trial court abused its discretion when it denied a motion for mistrial after a police officer testified that he had terminated his interview with the defendant after the defendant requested a lawyer;

D. Whether the trial court committed reversible error by denying the defendant's requested instruction on self-defense on the count of aggravated assault.

## DISCUSSION

¶ 15 Like the majority of states, Arizona has enacted a statute intended to protect victims of rape from being exposed at trial to harassing or irrelevant questions concerning

any past sexual behavior.[2] The Arizona Rape Shield Law states as follows:

A. Evidence relating to a victim's reputation for chastity and opinion evidence relating to a victim's chastity are not admissible in any prosecution for any offense in this chapter. Evidence of specific instances of the victim's prior sexual conduct may be admitted only if a judge finds the evidence is relevant and is material to a fact in issue in the case and that the inflammatory or prejudicial nature of the evidence does not outweigh the probative value of the evidence, and if the evidence is one of the following:

1. Evidence of the victim's past sexual conduct with the defendant.

2. Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, disease or trauma.

3. Evidence that supports a claim that the victim has a motive in accusing the defendant of the crime.

4. Evidence offered for the purpose of impeachment when the prosecutor puts the victim's prior sexual conduct in issue.

5. Evidence of false allegations of sexual misconduct made by the victim against others.

B. Evidence described in subsection A shall not be referred to in any statements to a jury or introduced at trial without a court order after a hearing on written motions is held to determine the admissibility of the evidence. If new information is discovered during the course of the trial that may make the evidence described in subsection a[sic] admissible, the court may hold a hearing to determine the admissibility of the evidence under subsection A. The standard for admissibility of evidence under subsection A is by clear and convincing evidence.

¶ 16 These provisions generally prohibit a criminal defendant from introducing at trial evidence relating to a victim's reputation for chastity and opinion evidence relating to a victim's chastity. A.R.S. § 13–1421(A). However, the statute incorporates five exceptions to this broad ban, including evidence of an alleged rape victim's false accusations of sexual misconduct against others. A.R.S. § 13–1421(A)(5). This exception allows a defendant to introduce evidence of a victim's previous false accusations against others, but only if the trial court determines that the relevance and probative value of the information outweigh its prejudicial effect and if the defendant is able to prove the existence of the accusations by clear and convincing proof. A.R.S. § 13–1421(A), (B). Thus, the Arizona Rape Shield Law does not abrogate the admissibility of all evidence impugning a victim's chastity.[3]

### A. Constitutionality of A.R.S. Section 13–1421 [4]

¶ 17 A law is presumed to be constitutional unless the complaining party dem-

---

**2.** Rape shield laws have been enacted by almost every state. See *Summitt v. State*, 101 Nev. 159, 697 P.2d 1374 (1985) (noting that, in 1977, Nevada joined 45 states and the federal government in passing a rape-shield law). Moreover, Federal Rule of Evidence 412 was adopted to follow the lead of states enacting statutes or rules to protect the privacy of rape victims. *Commentary*, Fed. R.Evid. 412.

**3.** The Arizona Rape Shield Law seemingly codifies the rule enunciated in the Arizona Supreme Court case *State ex rel. Pope v. Superior Court In and For Mohave County*, 113 Ariz. 22, 545 P.2d 946 (1976), and its progeny. Recognizing the specious connection between a witness' veracity and her sexual immorality, *id.* at 26, 545 P.2d at 950, the court in *Pope* held that evidence concerning a rape victim's alleged lack of chastity is generally inadmissible unless, in certain limited

situations, the evidence of prior acts has sufficient probative value to outweigh its inflammatory effect on her credibility. *Id.* at 29, 545 P.2d at 953. These circumstances include evidence of prior consensual sexual intercourse with the defendant or testimony that directly refutes physical or scientific evidence such as the victim's alleged loss of virginity, the origin of semen or disease and pregnancy. *Id.* In instances when the evidence concerning the victim's alleged lack of chastity is sufficiently probative, the court establishes a procedure to determine whether such evidence should be presented to the jury. *Id.*

**4.** Although the defendant did not raise any constitutional issues below, constitutional arguments may be considered for the first time on appeal. See *Olson v. Walker*, 162 Ariz. 174, 181, 781 P.2d 1015, 1022 (App.1989).

onstrates that the enactment violates the federal or state constitution. *See Chevron Chemical Company v. Superior Court*, 131 Ariz. 431, 438, 641 P.2d 1275, 1282 (1982); *State v. Takacs*, 169 Ariz. 392, 395, 819 P.2d 978, 981 (App.1991). Accordingly, the constitutionality of a statute is a matter of law which we review de novo, *see State v. Buccini*, 167 Ariz. 550, 556, 810 P.2d 178, 184 (1991), and we will resolve all uncertainties in favor of constitutionality. *See Arizona Downs v. Arizona Horsemen's Foundation*, 130 Ariz. 550, 554, 637 P.2d 1053, 1057 (1981); *Takacs*, 169 Ariz. at 395, 819 P.2d at 981.

¶ 18 The defendant contends that the Arizona Rape Shield Law is unconstitutional on its face and as applied because it deprived him of his rights to due process, to present a defense and to confront witnesses according to the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and article 2, sections 4 and 24 of the Arizona Constitution. He also claims that the statute intrudes upon the rule-making power of the Arizona Supreme Court pursuant to article 6, section 5 of the Arizona Constitution and that it violates the doctrine of the separation of powers under article 3 of the Arizona Constitution. We analyze these contentions in order.

### 1. *Right to Present Defense and Cross–Examine Witnesses*

¶ 19 The Due Process Clause of the Fourteenth Amendment to the United States Constitution guarantees a criminal defendant "a meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). Implicit within this assurance is the right to offer the testimony of witnesses and to compel their attendance in order to present to the jury the defendant's as well as the prosecution's version of the facts so that the jury may determine the truth. *See Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). Thus, just as the defendant has the right to cross-examine the government's witnesses, he has the right to present his own witnesses. *Id.; see also Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Ferguson v. Georgia*,

365 U.S. 570, 581, 81 S.Ct. 756, 5 L.Ed.2d 783 (1961). Because these rights constitute fundamental elements of the due process of law, *see Washington*, 388 U.S. at 19, 87 S.Ct. 1920, restrictions on a defendant's right to testify must not be arbitrary or so disproportionate as to infringe on the defendant's constitutional right to testify. *See Rock v. Arkansas*, 483 U.S. 44, 56, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987).

¶ 20 The Arizona Rape Shield Law clearly implicates the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and article 2, sections 4 and 24 of the Arizona Constitution to the extent that it operates to prevent a criminal defendant from presenting relevant evidence, confronting adverse witnesses and presenting a defense. *See Michigan v. Lucas*, 500 U.S. 145, 149, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991). But a defendant's right to present relevant testimony is not limitless. *See Rock*, 483 U.S. at 55, 107 S.Ct. 2704. Rather, the right "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).

¶ 21 In *Lucas*, the Court held that the notice-and-hearing requirement of a rape shield statute serves a legitimate state interest in protecting against the harassment of a victim. 500 U.S. at 152–53, 111 S.Ct. 1743. As the Court wrote, because a rape shield statute is "designed to protect victims of rape from being exposed at trial to harassing or irrelevant questions concerning their past sexual behavior," *id.* at 146, 111 S.Ct. 1743, it "represents a valid legislative determination that rape victims deserve heightened protection against surprise, harassment, and unnecessary invasions of privacy." *Id.* at 150, 111 S.Ct. 1743. Thus, rape shield statutes have endured due process and Sixth Amendment challenges because "[t]he Sixth amendment does not confer the right to present testimony free from the legitimate demands of the adversarial system." *United States v. Nobles*, 422 U.S. 225, 241, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975); *see* Joel E. Smith, Annotation, *Constitutionality of "Rape Shield Statute" Restricting Use of Evidence of Vic-*

*tim's Sexual Experiences,* 1 A.L.R.4th 283 (1980 & 1999 Supp.).

¶ 22 The Arizona Rape Shield Law meets the requisite notice-and-hearing requirement. It mandates that there be a hearing on written motions to determine the admissibility of the evidence of the alleged rape victim's chastity. A.R.S. § 13–1421(B). The defendant is not absolutely denied an opportunity to present evidence. *See Lucas,* 500 U.S. at 146, 111 S.Ct. 1743. Rather, the statute provides procedural safeguards to admit evidence of the victim's prior sexual activity when that evidence has substantial probative value and when alternative evidence tending to prove the issue is not reasonably available. *See Olden v. Kentucky,* 488 U.S. 227, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988) (It was a constitutional violation when a trial court excluded evidence of a rape victim's relationship with another man when evidence of that relationship would have provided strong evidence of her motive to lie about being raped and there was no alternative evidence that would have tended to show the same.); *United States v. Bear Stops,* 997 F.2d 451 (8th Cir.1993) (It was a constitutional error to exclude evidence relating to a victim's sexual assault by other parties because the evidence was highly probative to establish an alternative explanation for why the victim exhibited the behavior of a sexually-abused child and no other evidence was reasonably available.).

¶ 23 Given that "the constitutionality of such a law as applied to preclude particular exculpatory evidence remains subject to examination on a case by case basis," *Sandoval v. Acevedo,* 996 F.2d 145, 149 (7th Cir.1993), the restrictions delineated in the Arizona Rape Shield Law are not disproportionate to the purpose the rape shield statute serves. *Cf. Rock,* 483 U.S. at 53–55, 107 S.Ct. 2704. The law provides procedural safeguards to reduce inaccuracies and prejudicial evidence, rather than an arbitrary and unconstitutional *per se* exclusion, *id.* at 61, 107 S.Ct. 2704, as is alleged by the defendant. The Arizona Rape Shield Law is constitutional.

> *2. Invasion of Arizona Supreme Court's Rulemaking Authority and Violation of Doctrine of Separation of Powers*

¶ 24 The defendant also claims that the legislature invaded the province of the Arizona Supreme Court by enacting the Arizona Rape Shield Law and establishing "clear and convincing" as the quantum of proof necessary for the admissibility of such evidence. He thus maintains that A.R.S. section 13–1421 violates the separation of powers doctrine.

¶ 25 The Arizona Constitution divides the powers of government into three departments and provides that "no one of such departments shall exercise the powers properly belonging to either of the others." Ariz. Const. art. 3. Although the purpose of the doctrine of the separation of powers is to protect one branch of government against the overreaching of any other branch, common boundaries exist among the branches, and the doctrine does not require a "hermetic sealing off" of the branches of government one from another. *State v. Prentiss,* 163 Ariz. 81, 84–85, 786 P.2d 932, 935–36. (1989). "More than one department may have a legitimate and constitutionally permitted involvement in the same area [and] Department roles legitimately overlap in the attempt to prevent and punish criminal activity." *State v. Ramsey,* 171 Ariz. 409, 413, 831 P.2d 408, 412 (App.1992) (citations omitted).

¶ 26 The Arizona Constitution vests power to make procedural rules with the Arizona Supreme Court. Ariz. Const. art. 6, § 5. While rules of evidence generally are regarded as procedural, a statutory evidentiary rule may supplement the rules promulgated by the court. *See State ex rel. Woods v. Filler,* 169 Ariz. 224, 227, 818 P.2d 209, 212 (App.1991) (statute allowing hearsay testimony to establish probable cause in forfeiture proceeding not unconstitutional invasion of rulemaking authority absent showing inconsistent with purpose of hearsay exception in rules). An example is one codifying a workable, reasonable alternative method to a procedure encompassed in the Arizona Rules of Evidence. *See State ex rel. Collins v. Seidel,* 142 Ariz. 587, 591, 691 P.2d 678, 682 (1984) (statutory rule establishing procedure for evidentiary admission of results of blood alcohol tests not unconstitutional).

¶ 27 Both Subsections A and B of A.R.S. section 13–1421 supplement the evidentiary rules. Subsection A mirrors the Arizona Supreme Court's decision in *State ex rel. Pope v. Superior Court In and For Mohave County*, 113 Ariz. 22, 545 P.2d 946 (1976), with regard to the rules concerning the admission and exclusion of evidence in a sexual-assault case, and it is not inconsistent with other rules of evidence.[5] Subsection B provides that the admissibility of evidence described in subsection A must be established by clear and convincing evidence after notice and a hearing.[6] Although this standard is not found in *Pope* or the rules of evidence, the burden of proof is substantive, not procedural. *See State v. Fletcher*, 149 Ariz. 187, 192, 717 P.2d 866, 871 (1986), *citing Dick v. New York Life Ins. Co.*, 359 U.S. 437, 446, 79 S.Ct. 921, 3 L.Ed.2d 935 (1959); *see also Montana v. Egelhoff*, 518 U.S. 37, 55, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996), *citing McMillan v. Pennsylvania*, 477 U.S. 79, 89 n. 5, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986); *Patterson v. New York*, 432 U.S. 197, 201–02, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). Therefore, a legislative enactment that changes the burden of proof does not violate constitutional standards. *Fletcher*, 149 Ariz. at 192, 717 P.2d at 871;[7] *see also Egelhoff*, 518 U.S. at 55, 116 S.Ct. 2013 (1996); *Patterson*, 432 U.S. at 201–02, 97 S.Ct. 2319.

¶ 28 The legislature had a legitimate governmental purpose in enacting the Arizona Rape Shield Law. The statute neither conflicts with existing rules of evidence nor hampers the judicial branch of government in the performance of its duties.[8] Therefore, A.R.S. section 13–1421 neither impermissibly infringes upon the Arizona Supreme Court's rulemaking authority nor violates the doctrine of the separation of powers.

### B. Exclusion of Evidence under A.R.S. Section 13–1421(A)(5)

¶ 29 The defendant next contends that, even if the Arizona Rape Shield Law is constitutional, the trial court erred in deciding that he had not met the threshold evidentiary requirement of proof by clear and convincing evidence. Although a false accusation of sexual misconduct against another person by the alleged rape victim is an

---

5. For example, evidence which is relevant is admissible, while irrelevant evidence is inadmissible. Rule 402, Ariz. R. Evid. Relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Rule 403, Ariz. R. Evid. Subject to Rule 403, evidence of other crimes, wrongs or acts of a person is not admissible unless offered for a proper purpose. Rule 404(b), Ariz. R. Evid.; *State v. Ives*, 187 Ariz. 102, 111, 927 P.2d 762, 771 (1996). Opinion and reputation evidence may be admitted to prove a person's character for truthfulness if attacked, but specific past acts of untruthfulness may be excluded by the trial court if unrelated to the instant situation. Rule 608, Ariz. R. Evid.; *State v. Cook*, 151 Ariz. 205, 206, 726 P.2d 621, 622 (App.1986).

6. A similar procedure was approved in *Lucas*, 500 U.S. at 151–152, 111 S.Ct. 1743. *See also* Rule 104, Ariz. R. Evid. (hearing to determine admissibility of evidence conducted by trial court outside presence of jury).

7. For example, in *Fletcher*, the legislature enacted A.R.S. section 13–502(B), which placed the burden of proving the affirmative defense of insanity on the defendant, whereas, previously, if a defendant presented evidence that brought into question his sanity, the state was required to carry the burden of proving the defendant sane beyond a reasonable doubt. The Arizona Supreme Court found that the statute was substantive and did not violate the doctrine of the separation of powers. Additionally, the burden of proof in A.R.S. section 13–1421(B) parallels the requirement adopted by the supreme court that other-act evidence cannot be admitted unless it is proven by clear and convincing evidence that the other acts were committed by the defendant. *See State v. Terrazas*, 189 Ariz. 580, 582, 944 P.2d 1194, 1196 (1997).

8. Two courts also have rejected arguments that their respective state rape shield statutes impermissibly intrude upon the rulemaking power of the court or violate the doctrine of the separation of powers according to their state constitutions. *See State v. Mitchell*, 144 Wis.2d 596, 424 N.W.2d 698 (1988) (The legislature's adoption of a rape shield law was rational, did not defeat functioning of judicial system and was not an unconstitutional invasion of judicial power.); *People v. McKenna*, 196 Colo. 367, 585 P.2d 275 (1978) (The legislature had a legitimate interest in protecting rape victims and, because the statute did not conflict with existing rules, the rape-shield statute did not intrude into matters exclusively judicial.).

exception to the general ban on evidence, A.R.S. § 13–1421(A)(5), the court has considerable discretion in determining whether the probative value of the evidence is substantially outweighed by its unfairly prejudicial effect. *See State v. Fernane,* 185 Ariz. 222, 226, 914 P.2d 1314, 1318 (App.1995). In conjunction with the statute, Arizona Rule of Evidence ("Rule") 608(b) grants the court the discretion to exclude past acts of untruthfulness unrelated to the instant situation, *see State v. Littles,* 123 Ariz. 427, 430, 600 P.2d 40, 43 (App.1979), weighing the value of such evidence against the possibility of unfair prejudice under Rule 403. *See State v. Woods,* 141 Ariz. 446, 450, 687 P.2d 1201, 1205 (1984). Thus, the court's determination of the relevance and admissibility of the evidence will not be disturbed on appeal absent a clear abuse of the court's discretion. *See State v. Hensley,* 142 Ariz. 598, 602, 691 P.2d 689, 693 (1984).

¶ 30 The defendant sought to have admitted evidence that, in the past, C. had made a false allegation of sexual misconduct against K. K., 13 years old at the time of the trial, stated that, "a long time ago," he had talked with C. about sex and that she later had told a mutual friend that he had tried to rape her. K. added that C. had asked him to have sex with her but that he had said "no." Although K. claimed that he and his mother had confronted C.'s grandmother about C.'s accusation, C.'s grandmother testified that she did not recall such a visit.

¶ 31 At the same hearing, C. denied telling her friends that K. had tried to rape her, although she admitted to having told friends that K. was trying to "do it with her" and that some of her friends had shared similar experiences with K. C. added that, while she had let K. touch her, they did not have sexual intercourse. She also admitted that K. and his mother had approached her regarding the accusations about K. threatening or trying to rape her.

¶ 32 The trial court found that the defendant had not shown with clear and convincing evidence that C. had made false allegations of sexual misconduct against another person. K.'s and C.'s testimony was inconsistent; although C. acknowledged her sexual experience with K., she denied telling anyone that he had raped her. And the defendant failed to offer testimony from any witness who allegedly had heard C.'s false accusations.

¶ 33 The trial court was in the best position to evaluate the evidence and judge the credibility of the witnesses. *See State v. Cannon,* 148 Ariz. 72, 76, 713 P.2d 273, 277 (1985). The record supports its determination that the defendant failed to show by clear and convincing evidence that C. previously had made a false accusation of sexual misconduct. Thus, as applied to the defendant, he was not deprived of due process or his Sixth Amendment right to present a complete defense and cross-examine witnesses.[9]

### C. Denial of Motion for Mistrial

¶ 34 The defendant contends that the trial court abused its discretion when it denied his motion for mistrial after a police officer testified that the officer had terminated his interview with the defendant after the defendant requested a lawyer. We disagree.

¶ 35 "Declaring a mistrial is an unusual remedy for trial error and should not be resorted to unless justice requires such a result." *State v. White,* 160 Ariz. 24, 33, 770 P.2d 328, 337 (1989). In deciding whether to grant a mistrial, the trial court must determine if a statement, the substance of which was not admissible, alerted the jury to a matter it should not consider and the probability that the jury indeed was influenced by it. *See State v. Hansen,* 156 Ariz. 291, 297, 751 P.2d 951, 957 (1988). The decision to deny a mistrial is within the discretion of the

---

9. The trial court said that the exception "is meant for situations where a victim falsely reports to a teacher, to a—to an authority figure or someone if that someone is engaged in some sexual misconduct with the child, or in this case, the child, that simply wasn't done. This is a situation where if any activity took place it was between children of a fairly young age. And I simply cannot find that this falls under the exception by clear and convincing evidence." Because of the resolution of this issue, we need not address this aspect of the trial court's ruling. *See State v. Perez,* 141 Ariz. 459, 464, 687 P.2d 1214, 1219 (1991) (This court will affirm a trial court's ruling if it is legally correct for any reason.).

court, and it. will not be disturbed absent a plain abuse of that discretion. *See State v. Correll,* 148 Ariz. 468, 477, 715 P.2d 721, 730 (1986).

¶ 36 In this context, a defendant's due process is violated when a witness introduces a statement at trial that the defendant asserted his right to remain silent. *See Doyle v. Ohio,* 426 U.S. 610, 617, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). His due process also may be violated when evidence is admitted that he invoked his right to meet with counsel before his arrest. *See State v. Palenkas,* 188 Ariz. 201, 212, 933 P.2d 1269, 1280 (App.1996). This rule "rests on 'the fundamental unfairness of implicitly assuring a suspect that his silence will not be used against him and then using his silence to impeach an explanation subsequently offered at trial.'" *Brecht v. Abrahamson,* 507 U.S. 619, 628, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), *quoting Wainwright v. Greenfield,* 474 U.S. 284, 291, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986).

¶ 37 The defendant moved for a mis- trial on the basis that Detective Timothy Ahumada adversely commented on the defendant's invocation of the defendant's right to remain silent. In particular, Ahumada testified that he had interviewed the defendant at the police station. When the prosecutor asked the detective at what point he had ended the interview, Ahumada responded that,

> [a]fter the—after re-entering the interview room the second time, Mr. Gilfillan understood the gravity of the charges, and he requested the assistance of a lawyer. And at that point, I concluded all of the questioning pertaining to this—to this matter.

Although the trial court ruled that this evidence was offered to explain why the interview was terminated when it was, the defendant claims that the court abused its discretion in denying the motion because the testimony was an improper comment on his exercise of his privilege against self-incrimination. *See Doyle,* 426 U.S. at 617, 96 S.Ct. 2240; *Palenkas,* 188 Ariz. at 212, 933 P.2d at 1280.

¶ 38 The question and answer did not necessarily suggest to the jury that the defendant was guilty because he had invoked his right to counsel during police questioning. Nonetheless, even if the testimony had brought to the jury's attention an inappropriate matter, the testimony consisted of no more than a brief reference to the defendant's request for counsel offered to explain why the interview ended; there is no suggestion that it was elicited as the result of willful misconduct by the prosecutor. *See Palenkas,* 188 Ariz. at 213, 933 P.2d at 1281 (deliberate and repeated attempts by prosecutor to establish defendant's guilt by reference to invocation of defendant's constitutional rights required new trial). There was no reasonable probability that the evidence materially affected the outcome of the trial and, therefore, no error requiring reversal.

### D. Refusal to Give Self–Defense Instruction

¶ 39 A defendant is entitled to an instruction on self-defense if there is the slightest evidence of justification for his act. *See State v. Dumaine,* 162 Ariz. 392, 404, 783 P.2d 1184, 1196 (1989). According to A.R.S. section 13–404, a person is justified in threatening or using physical force against another person when and to the extent a reasonable person would believe that it was immediately necessary to protect himself against the other's use or attempted use of physical force. A self-defense instruction must be given if the defendant demonstrates that "(1) he reasonably believed he was in immediate physical danger; (2) he acted solely because of his belief; and (3) he used no more force than appeared reasonably necessary under the circumstances." *State v. Walters,* 155 Ariz. 548, 553, 748 P.2d 777, 782 (App.1987). When determining whether a self-defense instruction is required, we examine the defendant's evidence and any other evidence that might support a claim of self-defense, even if the evidence is in conflict on this issue. *Id.* We will not reverse a trial court's decision to refuse a jury instruction absent an abuse of its discretion. *See State v. Bolton,* 182 Ariz. 290, 309, 896 P.2d 830, 849 (1995).

¶ 40 The defendant contends that he was entitled to a self-defense instruction because he testified that he struck C. to protect himself from her attack on him with the knife. However, the state never charged the defendant with aggravated assault for that act. Rather, he was charged with committing aggravated assault against C. by intentionally placing her in reasonable apprehension of imminent physical injury using a knife. The defendant denied having a knife, let alone threatening C. with it. Given that the defendant denied committing the act with which he was charged, it follows that he could not argue self-defense. *See Walters*, 155 Ariz. at 554, 748 P.2d at 783. Thus, the defendant was not entitled to a self-defense instruction, and the trial court did not err in refusing to give one.

### CONCLUSION

¶ 41 The defendant's convictions and sentences are affirmed.

CONCURRING: EDWARD C. VOSS, Judge, and JON W. THOMPSON, Judge.