NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

KENNETH LEE FARR, *Appellant*.

No. 1 CA-CR 15-0772
FILED 5-2-2017

Appeal from the Superior Court in Maricopa County
No. CR2013-113940-001 DT
The Honorable Jay Ryan Adleman, Judge

**AFFIRMED IN PART; VACATED IN PART**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Guy Brown PLLC, Phoenix
By Guy F. Brown
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Jon W. Thompson joined.

**W I N T H R O P**, Judge:

**¶1**    Kenneth Lee Farr ("Appellant") appeals his convictions and sentences for twenty-three counts of sexual conduct with a minor.  For the following reasons, we affirm Appellant's convictions and sentences as to Counts 1-4, Counts 6-21, and Count 23, and vacate his convictions and sentences as to Counts 5 and 22.

### FACTS AND PROCEDURAL HISTORY[1]

**¶2**    Appellant was the pastor of Garden Paradise Church in Phoenix, where the victim and her family were members.  The victim began attending the church when she was eight years old and was friends with Appellant's step-daughter.  As the victim grew up, her relationship with her family deteriorated, and she began spending more time participating in church activities.  The victim did not have a father, and she became close with Appellant, who was a "father figure" to her.

**¶3**    In May 2012, when the victim was seventeen years old, Appellant took her to his home and engaged in sexual acts with her. Between May 2012 and March 2013, Appellant and the victim had multiple sexual encounters at Appellant's house, at the church, in Appellant's vehicle, in a church bus, at Appellant's mother's house, and in a motel.

**¶4**    On March 23, 2013, the victim was performing a sexual act on Appellant in the bedroom Appellant shared with his wife at his home. When Appellant and the victim saw the headlights of his wife's car outside, Appellant "pushed [the victim] back and he got up really quick and he zipped his pants . . . ."  Appellant's wife then called the victim's mother, who picked the victim up and took her home.  The next day, the victim told

---

[1]    We state the facts in the light most favorable to upholding the convictions.  *State v. Tucker*, 215 Ariz. 298, 306 n.1, 160 P.3d 177, 185 n.1 (2007).

her mother about her sexual relationship with Appellant, and her mother called the police.

¶5        The police initiated an investigation and interviewed the victim, who disclosed multiple sexual encounters with Appellant on different dates.  The victim was also examined by a forensic nurse.  During the examination, the victim stated she was "bipolar and [had] been diagnosed with schizophrenia,"[2] but was not taking the medicine that her psychiatrist prescribed to her.  Nevertheless, the victim spoke clearly and understood and responded to the nurse's questions.

¶6        The police also interviewed Appellant.  Although Appellant denied having any sexual contact with the victim, her DNA was found on his genitals.

¶7        In April 2013, Appellant was indicted on twenty-three counts of sexual conduct with a minor.  Before trial, Appellant moved the trial court to permit the introduction of evidence "bearing upon victim credibility and victim motive."  Specifically, Appellant requested the court permit "the use of statements [made] by the victim during her examination and treatment by hospital staff and other statements [made] by the victim about her virginity, her pregnancy, and her psychological condition."[3]  In its response, the State asserted that any mention of the victim's past sexual experiences was strictly precluded under Arizona's rape shield law.  *See* Ariz. Rev. Stat. ("A.R.S.") § 13-1421 (2010).  After hearing argument on the issue, the trial court denied Appellant's motion, stating that "any testimony

---

[2]        The record is unclear as to the exact diagnosis of the victim's psychological condition.  Throughout the trial record, counsel for both the State and Appellant refer to the condition as "bipolar schizophrenia." However, the defense expert testified that bipolar disorder and schizophrenia are in fact two separate conditions, although there "can be a conjunction between the two."

[3]        The record indicates the victim may have been pregnant at the time of the forensic exam in March 2013.  However, no evidence in this regard was introduced at trial.

regarding the chastity or lack of chastity of the victim is clearly prohibited under A.R.S. 13-1421(A)."[4]

¶8        At trial, the State presented testimony from crime scene specialists, forensic nurses, a forensic scientist, a DNA analyst, two detectives, a forensic interviewer, and the victim.  Appellant's wife and daughter testified on his behalf.  Appellant also called Dr. Streed, a behavioral scientist, to testify about the concept of "confabulation" and its link to schizophrenia as support for his argument that the victim's psychological condition led her to falsely accuse Appellant by "creating false memories."  Dr. Streed defined confabulation as "filling in a gap of memory with something that seems reasonable and appropriate and logical."  He also testified that "[c]onfabulatory schizophrenia has to do with an individual that has an existing psychiatric disorder . . . in terms of recognition of reality.  The business of a confabulation has to do with filling in those portions of their experiences or life experiences that satisfy them as far as the explanation of what has been taking place or is taking place in a certain environment."

¶9        At the conclusion of trial, the jury found Appellant guilty as charged on all twenty-three counts of sexual conduct with a minor.  For Counts 1-12, the court sentenced Appellant to concurrent terms, with the longest being 9.25 years in the Arizona Department of Corrections.  For Counts 13-18, the court sentenced Appellant to concurrent terms of 9.25 years, to run consecutive to Counts 1-12.  For Counts 19-23, the court sentenced Appellant to concurrent terms of 9.25 years, to run consecutive to Counts 1-12 and Counts 13-18.  Appellant timely appealed, and we have jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9, and A.R.S. §§ 12-120.21(A)(1) (2016), 13-4031 (2010), and 13-4033(A) (2010).

## ANALYSIS

¶10        Appellant contends the trial court erred in excluding certain evidence relating to the victim's sexual history, pregnancy, and psychological condition.  According to Appellant, the trial court precluded the evidence in violation of Appellant's constitutional rights because the evidence was relevant to his defense that the victim fabricated the

---

[4]        The court noted, however, that if the victim or another witness "opened the door regarding the issue of the victim's chastity, then [the evidence] might at that point in time, related to credibility, come in in terms of some cross-examination."

allegations against him "in order to get back at Appellant and his wife for discontinuing financial support." We review the trial court's rulings on the exclusion of evidence for an abuse of discretion. *State v. Vega*, 228 Ariz. 24, 26, ¶ 6, 262 P.3d 628, 630 (App. 2011). But, we review a trial court's ruling implicating a defendant's constitutional rights *de novo*. *See State v. Ellison*, 213 Ariz. 116, 129, ¶ 42, 140 P.3d 899, 912 (2006).

### I.     *Preclusion of Evidence under the Rape Shield Law*

**¶11**       Arizona's rape shield law precludes the introduction of "[e]vidence relating to a victim's reputation for chastity . . . ." A.R.S. § 13-1421(A). However, evidence of specific instances of the victim's prior sexual conduct may be admitted if the evidence supports a claim that the victim has a motive in accusing the defendant of the crime or if it is evidence of specific instances of sexual activity showing the source or origin of pregnancy. A.R.S. § 13-1421(A)(2), (3). Even in those circumstances, however, the evidence will only be admissible "if a judge finds the evidence is relevant and is material to a fact in issue in the case and that the inflammatory or prejudicial nature of the evidence does not outweigh the probative value of the evidence." A.R.S. § 13-1421(A). "[T]he [trial] court has considerable discretion in determining whether the probative value of the evidence is substantially outweighed by its unfairly prejudicial effect." *State v. Gilfillan*, 196 Ariz. 396, 405, 998 P.2d 1069, 1078 (App. 2000).

**¶12**       Here, the trial court did not abuse its discretion in precluding evidence pertaining to the victim's sexual history and pregnancy. Appellant argues that the victim's sexual history and pregnancy were issues that "overlap[ped] with the credibility challenge inherent to bipolar schizophrenic confabulation, all of which reasonably might have arisen from the victim's motive to . . . get back at Appellant and his wife for discontinuing financial support." In his opening brief, Appellant does not expressly state what evidence he sought to admit. However, our review of the record reveals that he intended to introduce evidence that the victim "may have been a prostitute" and that "her boyfriend at the time was incarcerated." But Appellant offered no evidence at the pretrial hearing to show how the victim's alleged sexual history was relevant to his claim that she had a motive to "get back at him." Additionally, because the State did not present any evidence at trial pertaining to the victim's pregnancy, the evidence Appellant sought to admit pertaining to the alleged source of the pregnancy was not relevant to any material fact at issue. *See* A.R.S. § 13-1421(A).

¶13      Further, the trial court permitted Appellant to admit evidence pertaining to the victim's psychological condition, and allowed Dr. Streed, who had never evaluated or treated the victim, to testify about the concept of confabulation and its link to schizophrenia. To the extent Appellant contends his expert should have been permitted to testify as to the victim's credibility, the trial court did not abuse its discretion in precluding such testimony. *See State v. Lindsey*, 149 Ariz. 472, 475, 720 P.2d 73, 76 (1986) ("[E]ven where expert testimony on behavioral characteristics that affect credibility or accuracy of observation is allowed, experts should not be allowed to give their opinion of the accuracy, reliability or credibility of a particular witness in the case being tried.").

## II. *Constitutional Considerations*

¶14      Contrary to Appellant's assertion, the trial court did not violate Appellant's constitutional right to "confront his accuser" and "present a complete defense" by precluding the evidence of the victim's sexual history and pregnancy. Although the rape shield law "clearly implicates" a defendant's constitutional rights, this court has declared the statute constitutional on its face in light of the "legitimate state interest in protecting against the harassment of a victim." *Gilfillan*, 196 Ariz. at 402-03, 998 P.2d at 1075-76. However, this court has also stated that certain circumstances "may arise in the future in which the statute may be unconstitutional as applied," such as situations in which the evidence "has substantial probative value and when alternative evidence tending to prove the issue is not reasonably available." *State ex rel. Montgomery v. Duncan*, 228 Ariz. 514, 516, ¶ 5, 269 P.3d 690, 692 (App. 2011) (internal citations and quotations omitted).

¶15      In this case, because Appellant failed to show that the evidence pertaining to the victim's sexual history and pregnancy had any bearing on the victim's alleged motive, the evidence did not have "substantial probative value." *See id.* Accordingly, the trial court's exclusion of the evidence under the rape shield law did not violate Appellant's constitutional rights.

## III. *Counts 5 and 22*

¶16      In its answering brief, the State requests we vacate Appellant's convictions and sentences for Counts 5 and 22 because the State presented insufficient evidence at trial to support the jury's verdicts on those counts. Because the record supports the State's assertion, we vacate Appellant's convictions and sentences for Counts 5 and 22.

## CONCLUSION

**¶17** Appellant's convictions and sentences as to Counts 1-4, Counts 6-21, and Count 23 are affirmed, and his convictions and sentences as to Counts 5 and 22 are vacated.



AMY M. WOOD • Clerk of the Court
FILED: AA