NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

NICHOLAS LORIN KING, *Appellant.*

No. 1 CA-CR 19-0161

FILED 4-14-2020

Appeal from the Superior Court in Maricopa County
No. CR2017-159215-001
The Honorable John Christian Rea, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Mark E. Dwyer
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge David B. Gass joined.

---

**C R U Z**, Judge:

¶1        Nicholas Lorin King ("King") appeals his convictions and sentences for Count one, possession or use of dangerous drugs; Count two, possession or use of narcotic drugs; and Counts three and four, promoting prison contraband.  For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2        Police were called to a scene where an individual witnessed a man arguing with a female victim.  The male suspect was also observed being violent towards the female victim.  Police detained the man, who turned out to be King, in order to investigate the situation.  The officers conducted a brief, initial search for weapons on King's person when detaining him, and the officers did not find any weapons or other contraband.  After questioning King, officers learned that King and the female victim knew one another, and there was a court order that prohibited King from having contact with her.

¶3        King was then arrested, and a more thorough search was conducted.  He was patted down from top to bottom, pockets were emptied, and his belt and jewelry were removed.  Officers still did not locate any illegal contraband.  King was then transported to a holding facility, and upon his arrival, another thorough search of King was conducted.  King was patted down again, pockets checked, and his shoes were taken off.  King was booked into jail and placed in a holding cell alone.  About an hour or two after his arrival, another man was placed into the cell with King.  For the most part, the two men sat on opposite corners of the cell.

¶4        King's holding cell was being surveilled and monitored, although the surveillance screens have a grey box over the toilet area of the cell to respect the privacy of the arrested individuals.  An officer noticed that King kept going to the toilet area of the cell, which was mostly blocked from the view of the cameras.  However, whenever King was in view of the

2

cameras, King looked to be manipulating something in his hands. Suspicious, the officer continued to closely monitor King within the cell. The officer noticed King start to roll a thumb-sized, white object in his hands. The officer then saw King pull the front of his pants out and place this small object in the front pocket of his underwear. The officer told his supervisor, who then watched the surveillance video of King. The supervisor agreed that King appeared to be acting suspiciously, and he decided that a strip search should be conducted on King.

¶5        King was removed from the holding cell and placed in the search area. King's clothes were removed, and the officers thoroughly searched each item. An officer saw the front of King's boxer shorts were ripped and there was a hole cut into the front flap of the boxers. The officer removed a brown, tar-like substance and a white, crystal-like substance from the boxers, which were both wrapped in a plastic wrapper and a piece of toilet paper. When asked what the substances were, King admitted to possessing meth. Later testing revealed the brown substance to be heroin and the white substance to be methamphetamine.

¶6        King was charged with disorderly conduct and domestic violence for the events that led to his original arrest. In addition, King was charged with possession of drugs and promoting prison contraband. King pled guilty to the disorderly conduct and domestic violence offense. At trial for the drug-related offenses, King admitted to possessing the heroin and methamphetamine, but he denied that he entered the jail with the drugs. Instead, King claimed after he was booked and before he was placed into a cell alone, he was first placed in a cell with four or five other individuals. He claimed one of these individuals gave him the drugs. Two officers testified King was never placed in a holding cell with four or five other individuals, and instead, immediately upon his arrival, King was placed in a cell alone.

¶7        A detention officer that participated in the strip search also testified. King's counsel questioned the detention officer about whether there were any recorded statements of King throughout his stay at the jail. In response to one of the questions, the detention officer commented that King had "invoked his right to an attorney." King's counsel did not object to the statement and continued his questioning. Shortly after, a bench conference was held. Out of the presence of the jury, King's counsel notified the court that the detention officer stated King "invoked his right to an attorney" and asked for a mistrial. The parties agreed to further discuss the issue during the next recess. After recess was called, King's counsel moved for a mistrial, which the prosecution opposed. After

considering the motion for a mistrial, the superior court denied it, and trial continued.

**¶8**　　　　The jurors convicted King on all counts.  The superior court found that King had four prior felony convictions, sentencing him to two presumptive terms of ten years for count one, possession or use of dangerous drugs; and count two, possession or use of narcotic drugs.  King was sentenced to two mitigated terms of fourteen years for the two counts of promoting prison contraband.  The sentences were all ordered to be served concurrently.

**¶9**　　　　King appeals his convictions and sentences.  We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

## DISCUSSION

**¶10**　　　　King contends the superior court erred when it denied his motion for a mistrial after a detention officer testified that he invoked his right to an attorney.

**¶11**　　　　"A declaration of a mistrial is the most dramatic remedy for trial error and should be granted only when it appears that justice will be thwarted unless the jury is discharged and a new trial granted." *State v. Adamson*, 136 Ariz. 250, 262 (1983).  In deciding whether to grant a mistrial based on witness testimony, the superior court considers whether "the testimony called to the jury's attention matters that it would not have been justified in considering in reaching the verdict," and "the probability that the testimony influenced the jury." *State v. Gulbrandson*, 184 Ariz. 46, 62 (1995).  The decision to deny a mistrial is within the discretion of the superior court, and we will not disturb its decision absent an abuse of discretion. *State v. Simms*, 176 Ariz. 538, 540 (App. 1993).

**¶12**　　　　On cross-examination, King's counsel asked the detention officer several questions about whether certain areas of the jail were being audio recorded.  King's counsel continued:

> Counsel:　　Okay. What about the common area? I'm going to call it the common area, that's probably not what it's referred to, but this interior area?
>
> Officer:　　Yeah.  So we call it the search area.  To my knowledge there's no recording in there.

4

Counsel:     Okay.  So no recordings of any statements that you attribute to Mr. King, correct?

Officer:     Correct.

Counsel:     Not on body cam, not on any sort of tape recorder or anything like that, correct?

Officer:     **Just when he invoked his right to an attorney**, that's the only one.

Counsel:     What happened to those boxer shorts?

Officer:     I don't know.

Counsel:     You don't know where they're at today?

Officer:     I don't know.

Counsel:     If I can have just a moment, Your Honor?

Court:     You may.

Counsel:     No further questions, Your Honor.

**(**Emphasis added).

¶13          It is well settled that a witness may not comment on a defendant's invocation of his right to counsel, and the defendant's due process may be violated if this occurs.  *State v. Gilfillan*, 196 Ariz. 396, 406, ¶¶ 35-36 (App. 2000) (overruled on other grounds).  However, this does not always amount to reversible error if the error is harmless.  *See State v. Palenkas*, 188 Ariz. 201, 212-13 (App. 1996) ("Error is 'harmless' when it can be said beyond a reasonable doubt that it did not contribute to or affect the verdict.").

¶14          Here, the superior court found that there was "no reasonable possibility that the jury would understand the reference" or that it otherwise would "perceive that that's an admission of guilt."   The statement was no more than a "brief reference to the defendant's request for counsel" and it "did not necessarily suggest to the jury that the defendant was guilty because he had invoked his right to counsel during police questioning."  *Gilfillan*, 196 Ariz. at 406, ¶ 38.  The detention officer's testimony that King "invoked his right to counsel" was buried within a line of questioning regarding whether King's statements to police were

recorded. And following this statement, King's counsel immediately went into a new line of questioning regarding King's boxer shorts. King's counsel did not object to the witness' statement or draw attention to it in any other way, making it even less likely that the statement influenced the jury.

¶15        The detention officer's statement was also a response to a question asked by King's counsel, and it was not elicited by the prosecution as a deliberate attempt to establish King's guilt.[1] *See Gilfillan*, 196 Ariz. at 406, ¶ 38; *see also Palenkas*, 188 Ariz. at 213. Although King argues that the detention officer "was a trained officer who knew that he should not reference the invocation," the Arizona Supreme Court has rejected this argument, finding "an able lawyer conducting cross-examination can usually avoid the injection of known inadmissible testimony by using narrow, leading questions." *State v. Stuard*, 176 Ariz. 589, 601 (1993). During trial, the prosecutor even interrupted defense counsel's cross-examination of the detention officer and asked for a bench conference. The prosecutor warned King's counsel that his cross-examination might be confusing the detention officer, and to be more direct in his questioning, so the witness did not make another remark about King invoking his right to counsel. There is no evidence of prosecutorial misconduct, nor that the detention officer was intentionally trying to improperly influence the jury.

¶16        The trial judge did not believe that the jurors took note of the detention officer's reference that King asserted his right to counsel. And even if they did, the court did not believe the jury would understand such statement to be an indication of King's guilt. "The trial judge is able to sense the atmosphere of the trial, the manner in which the objectionable statement was made, and the possible effect it had on the jury and the trial." *State v. Koch*, 138 Ariz. 99, 101 (1983). King argues that such deference should not be given to the court in this case, because the judge "did not remember the improper statement," and "was asleep at the switch." However, the record does not show "that the judge did not observe the atmosphere, manner, and

---

[1]        In the opening brief, King's counsel argues that it was the prosecutor that was questioning the detention officer when the "improper statement" was made, and that "the prosecutor was deliberately leading his own witness." King himself wrote a separate letter to the court also claiming that the prosecutor was the one questioning the detention officer when the officer stated King invoked his right to counsel. However, a review of the transcript shows that King's counsel was questioning the detention officer when the comment regarding King invoking his right to an attorney was made.

effect" of the detention officer's comment as King contends. Instead, the judge stated he could not "remember exactly what [the detention officer] said."

¶17 We find that the superior court did not abuse its discretion by denying King's motion for a mistrial. There is overwhelming evidence that supports the jury's verdict. King admitted to knowingly possess the drugs, and although he claims another individual gave him the drugs inside a holding cell, two detention officers provided testimony to rebut this contention. Given the overwhelming evidence in this case, there was no reasonable probability that the detention officer's response regarding King's request for counsel materially affected the outcome of the trial, and therefore, there is no error requiring reversal.

## CONCLUSION

¶18 For the foregoing reasons, we affirm King's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED: AA