NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

MICHAEL MARION COTHAM, *Appellant.*

No. 1 CA-CR 14-0001

FILED 3-17-2015

Appeal from the Superior Court in Maricopa County
No.  CR2012-133092-002
The Honorable David B. Gass, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

The Hopkins Law Office, Tucson
By Cedric Martin Hopkins
*Counsel for Appellant*

Michael Marion Cotham, Florence
*Appellant*

---

## MEMORANDUM DECISION

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Margaret H. Downie and Judge Andrew W. Gould joined.

---

**T H U M M A**, Judge:

**¶1**    This is an appeal under *Anders v. California*, 386 U.S. 738 (1967) and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969). Counsel for defendant Michael Marion Cotham has advised the court that, after searching the entire record, he has found no arguable question of law and asks this court to conduct an *Anders* review of the record. Cotham was given the opportunity to file a supplemental brief pro se, and has done so. This court has reviewed the record and has found no reversible error. Accordingly, Cotham's convictions and resulting sentences are affirmed.

### FACTS[1] AND PROCEDURAL HISTORY

**¶2**    Cotham was charged with four counts of child prostitution, each a Class 2 felony. Before trial, the superior court granted several requests by Cotham to change counsel. Cotham then invoked his right to self-representation through a voluntary, signed waiver of counsel that was accepted by the court after an appropriate colloquy. After various motions and continuances, Cotham made a filing seeking to invoke his speedy trial rights and asking that trial be held within 90 days. This motion was granted and trial was scheduled for October 2013.

**¶3**    On the morning of the first day of trial, the superior court scheduled time for Cotham to meet with his investigator to go over the evidence before jury selection. However, Cotham (who was in custody) failed to appear in court that morning. After learning that Cotham refused transportation despite a warning that his failure to appear could result in revocation of his right to self-representation, the superior court revoked Cotham's right to self-representation. Cotham's advisory counsel was

---

[1] This court views the facts "in the light most favorable to sustaining the verdict, and resolve[s] all reasonable inferences against the defendant." *State v. Rienhardt*, 190 Ariz. 579, 588–89, 951 P.2d 454, 463–64 (1997) (citation omitted).

appointed as counsel and granted a two week continuance to prepare for trial.

¶4        At trial, the victim, T.G., testified that she met Cotham when she was 17 years old and staying with a friend after running away from a group home.[2] T.G. testified that Cotham and a man known as "Taxi Tom" talked to T.G. about becoming a prostitute for them. T.G. indicated that she was underage and did not want to become a prostitute but Cotham stated "we're going to do it anyway." According to T.G.'s testimony, Cotham became controlling and made her feel trapped. T.G. testified to having sex with numerous men while Cotham was prostituting her and stated that Cotham collected the payment, which was either drugs or money.

¶5        Police detectives testified that while investigating the matter, they engaged Cotham in conversation and used a fake story to explain their presence at a hotel where Cotham and T.G. were staying. While the detectives and Cotham were talking, T.G. approached Cotham and told him "a date . . . was on his way." At Cotham's suggestion, the detectives returned to the hotel later that night to spend time by the pool. While at the pool, T.G. joined the group and eventually spoke to one of the detectives alone. Based on that conversation, the detectives later returned to the hotel with other officers, including uniformed officers, to make arrests and execute a search warrant. When officers arrived on the floor where T.G. and Cotham were staying, they saw T.G. "walking fast and crying." T.G. told a detective that Cotham had "raised his fist at her because she had a conversation with [a detective] while [Cotham] was not present."

¶6        T.G. underwent a forensic exam. During the exam, T.G. indicated that Cotham had sexually assaulted her and had threatened both her and her family. The exam revealed several bruises on T.G. and several swabs were taken from T.G.'s genital area and breasts for DNA analysis. A forensic scientist testified that the DNA profile from one external genital swab was consistent with Cotham and that there was DNA from other unidentified individuals in the samples taken from T.G.

¶7        The jury found Cotham guilty on two counts of child prostitution and not guilty on the other two counts. On each guilty count, the jury also found three aggravating factors. At sentencing, Cotham's probation imposed for a prior conviction was revoked and, after being

_____

[2] Initials are used to protect the identity of the victim and witnesses. *See State v. Malonado*, 206 Ariz. 339, 341 n.1 ¶ 2, 78 P.3d 1060, 1062 n.1 (App. 2003).

given credit for time served, Cotham was released on that conviction. The superior court then sentenced Cotham to an aggravated sentence of 21 years for each of the child prostitution convictions to be served consecutively. Cotham properly was given 270 days of presentence incarceration credit on the first term to be served.

¶8    This court has jurisdiction over Cotham's timely appeal pursuant to the Arizona Constitution, Article 6, Section 9, and Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1), 13-4031, and -4033(A)(1) (2015).[3]

## DISCUSSION

¶9    This court has reviewed and considered counsel's brief and appellant's pro se supplemental brief, and has searched the entire record for reversible error. *See State v. Clark*, 196 Ariz. 530, 537 ¶ 30, 2 P.3d 89, 96 (App. 1999). Searching the record and briefs reveals no reversible error. The record shows that Cotham was either represented by counsel at all stages of the proceedings or that Cotham had knowingly, intelligently and voluntarily waived his right to counsel and represented himself. The evidence admitted at trial constitutes substantial evidence supporting Cotham's convictions. From the record, all proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure. The sentences imposed were within the statutory limits and permissible ranges.

¶10    Cotham raises several arguments in his pro se supplemental brief, which this court discusses in turn.

## I.    The Superior Court Did Not Err In Revoking Cotham's Right To Self-Representation.

¶11    Cotham contends the superior court abused its discretion by revoking his right to self-representation after he failed to appear for a morning meeting with his investigator on the first day of trial. The decision to revoke a defendant's self-representation right is reviewed for an abuse of discretion. *State v. Gomez*, 231 Ariz. 219, 222 ¶ 8, 293 P.3d 495, 498 (2012).

¶12    "The right to counsel under both the United States and Arizona Constitutions includes an accused's right to proceed without counsel and represent himself," *State v. Lamar*, 205 Ariz. 431, 435 ¶ 22, 72

_____

[3] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

P.3d 831, 835 (2003) (citing cases), "but only so long as the defendant 'is able and willing to abide by the rules of procedure and courtroom protocol,'" *State v. Whalen*, 192 Ariz. 103, 106, 961 P.2d 1051, 1054 (App. 1997) (citation omitted). Here, the superior court clearly informed Cotham of his responsibilities and consequences before it revoked Cotham's right to self-representation. The superior court explicitly stated that "[i]f you [Cotham] fail to attend the trial or refuse transport – it has happened – and if you decide to do that and absent yourself from this courtroom, you waive your right to represent yourself. So you need to make sure that you get ready and get here." The record shows that the next morning, Cotham refused transportation. After a delay and the superior court successfully ordering Cotham transported, the following exchange took place:

> THE COURT: Do you remember me telling you that if you refused transport, failed to appear, that that was something that I could use to decide to no longer represent yourself?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you remember me ordering that you would be here at 10:30 this morning to review the information that you said you needed to review?
>
> THE DEFENDANT: Yes, I do.
>
> THE COURT: And you failed to appear this morning, didn't you? Don't explain, just the answer is yes or no.
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And my understanding is because you refused to be transported, even though I entered the order specifically to allow you to prepare for yourself here today.
>
> THE DEFENDANT: Yes, sir.

Given Cotham's refusal to be transported on the first day of trial, notwithstanding the superior court's clear, unambiguous and timely warnings that Cotham would lose the right to represent himself if he did not follow the court's procedures and refused transport, the superior court

did not abuse its discretion in revoking Cotham's right of self-representation. *See Whalen*, 192 Ariz. at 107–08, 961 P.2d at 1055–56.

## II. The State Did Not Exceed The Scope Of The Indictment.

**¶13** Cotham argues that because he was charged with four counts of child prostitution, it was error for the court to allow the State to present evidence of his sexual conduct with T.G. because it was outside the scope of the indictment. Cotham failed to object at trial to the admission of the DNA evidence and forensic exam evidence and thus review on appeal is limited to fundamental error. *See* Ariz. R. Crim. P. 21.3(c); *State v. Henderson*, 210 Ariz. 561, 567–68 ¶¶ 19–20, 115 P.3d 601, 607–08 (2005). "Accordingly, [the defendant] 'bears the burden to establish that "(1) error exists, (2) the error is fundamental, and (3) the error caused him prejudice."'" *State v. James*, 231 Ariz. 490, 493 ¶ 11, 297 P.3d 182, 185 (App. 2013) (citations omitted). Cotham has not met his burden here.

**¶14** The State used the DNA evidence to show that T.G. had multiple sexual partners because she was being prostituted by Cotham and to corroborate T.G.'s testimony. Other testimony, including testimony about Cotham's conduct with T.G., was admitted to corroborate the State's theory of the case. Even assuming error in admitting such evidence, Cotham has not shown how such an error would be fundamental. There is no indication here that the evidence deprived Cotham of a right essential to his defense or that it deprived him of a fair trial and thus the admission of such evidence does not constitute fundamental error. *See Henderson*, 210 Ariz. at 567 ¶ 19, 115 P.3d at 607.

**¶15** Although Cotham alleges that the instruction on sexual conduct with a minor was improper, such an instruction is important in a child prostitution case to explain an element of the charge. Here, the jury acquitted Cotham of two counts of child prostitution and, contrary to Cotham's claim, did not appear confused as to the reason for the inclusion of the instruction. On this record, inclusion of the instruction was not fundamental error.

## III. The Superior Court Did Not Err In Precluding Evidence Of The Victim's Sexual Past.

**¶16** Cotham argues that the superior court erred in precluding evidence of T.G.'s sexual past to show the "acts of prostitution [] were consensual acts of prostitution that the defendant had no involvement [in] . . . and to directly refute the State's scientific evidence." Commonly referred

to as the "rape-shield law," A.R.S. § 13-1421 precludes evidence of a victim's sexual conduct unless it falls into one of five enumerated categories. The statute also states that such evidence is admissible only if the court finds that the evidence is relevant and material to a fact in issue and that the inflammatory or prejudicial nature of the evidence does not outweigh its probative value. *See* A.R.S. § 13-1421(A). This court reviews the superior court's decision to preclude evidence under A.R.S. § 13-1421 for an abuse of discretion. *See State v. Gilfillan*, 196 Ariz. 396, 405, 998 P.2d 1069, 1078 (App. 2000).

¶17    In response to the State's motion to preclude such evidence, the superior court found the victim's sexual past irrelevant and inadmissible. When pressed by the court for specific instances or evidence Cotham wanted to introduce, Cotham responded by saying "things about her sexual nature as a person" and her prior history of sexual conduct "not for money." Notably, when the court asked "[h]ow is it relevant because the charges against you are whether you engaged in child prostitution," Cotham replied "I don't know. . . They're probably not, but this is the stuff she's bringing up." Although Cotham argued that he could introduce T.G.'s sexual past because it was referenced in the police report, the superior court correctly stated that "[t]here's no exception for [it] just because it was included in the police report."

¶18    Moreover, the State only requested preclusion of T.G.'s sexual past before coming into contact with Cotham. In fact, the State introduced much of the evidence Cotham requested to show its theory that the victim had multiple sexual partners "due to the fact that she was engaging in prostitution." Cotham was free to argue that the sexual encounters were consensual and not for money but, as the superior court properly pointed out, T.G.'s sexual past before meeting Cotham "certainly [is] not relevant."

¶19    Although Cotham argues that T.G.'s sexual past could be introduced to refute DNA evidence taken from T.G., Cotham does not explain how such evidence would refute the State's DNA evidence. The superior court's ruling did not preclude Cotham's defense that T.G. was not paid for alleged prostitution acts nor did it preclude Cotham from arguing that T.G. did not engage in prostitution. Accordingly, on this record, there was no error in precluding evidence of the victim's sexual past.

## IV. The DNA Evidence Did Not Violate Cotham's Confrontation Clause Rights.

**¶20**        Cotham alleges the DNA evidence introduced at trial violated his Sixth Amendment right to confront adverse witnesses because "the DNA evidence provided by the State was not specific" and "[i]ntroduction of [the] DNA evidence in this manner allowed the DNA to, in essence tell a story which would be no different than if the State played a recording of these men stating they had sex with this alleged victim with the defense not able to question the men on this story." Cotham failed to make an objection at trial and thus review on appeal is limited to fundamental error. *See* Ariz. R. Crim. P. 21.3(c); *Henderson*, 210 Ariz. at 567–68 ¶¶ 19–20, 115 P.3d at 607–08.

**¶21**        Cotham has not shown how the admission of DNA evidence constitutes error, let alone fundamental error. The DNA evidence was introduced through a forensic scientist, who Cotham cross-examined, and was used to corroborate T.G.'s testimony. The fact that the DNA evidence itself, or the source of the DNA that was not Cotham's, could not be cross-examined is not a Sixth Amendment violation. Similarly, Cotham has not shown how his compulsory process rights were violated when the unknown sources of the DNA were not called by the State to testify.

## V. Cotham Lacks Standing To Assert A Fourth Amendment Violation.

**¶22**        Cotham also argues that that his Fourth Amendment rights were violated when the Phoenix police supplied alcohol to the 17-year old victim during the time when T.G. told the police she was being prostituted. There is conflicting evidence as to whether T.G. was supplied with, or consumed, alcohol in the presence of the police officers. Furthermore, "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Brown v. United States*, 411 U.S. 223, 230 (1973) (citing cases). Cotham has not shown that he has standing to assert an alleged Fourth Amendment violation on T.G.'s behalf.

## VI. Cotham's Speedy Trial Rights Were Not Violated.

**¶23**        Cotham argues that his speedy trial rights were "violated by the State obtaining continuances for trial conflicts that did not exist" and "by the court allowing an exclusion of time when [the court] took away the

defendant's pro se status." The decision to grant a motion for continuance falls within the sound discretion of the trial judge and will not be reversed absent an abuse of discretion that is demonstrably prejudicial to the defendant. *State v. Jackson*, 112 Ariz. 149, 154, 539 P.2d 906, 911 (1975).

¶24 By rule, a defendant must be tried within a certain number of days from a specified time, typically the arraignment. Ariz. R. Crim. P. 8.2. However, for certain trial continuances, speedy trial time calculations are excludable. *See* Ariz. R. Crim. P. 8.5(b). Here, the superior court found that the unavailability of the assigned prosecutor constituted extraordinary circumstances warranting a continuance and that "delay [was] indispensable to the interests of justice." The record shows that the assigned prosecutor was going to be in trial on another matter that took precedence over Cotham's trial because it was an older, in-custody matter. It cannot be said, on this record, that the granting of the continuance constituted an abuse of discretion. Moreover, Cotham has not shown any prejudice from the continuance. This conclusion is further supported by the fact that after this continuance, Cotham filed a motion for a speedy trial and, at the same hearing, asked for a two week continuance.

¶25 Furthermore, it cannot be said that Cotham was prejudiced by the two weeks of excluded time the court later granted to allow Cotham's counsel to prepare for trial once Cotham's pro per status was revoked. Defense counsel requested the two week continuance. Cotham has not shown error or resulting prejudice, given that the continuance was granted at defense counsel's request so that an adequate defense could be presented for Cotham during trial.

## VII. The Superior Court Did Not Err In Denying Cotham's Motion For A New Trial.

¶26 Cotham argues the superior court erred in denying his motion for a new trial based on "abuse of discretion by the trial court judge denying the defendant of his constitutional right to defend himself." This court reviews the denial of a motion for new trial for an abuse of discretion. *State v. Spears*, 184 Ariz. 277, 287, 908 P.2d 1062, 1072 (1996).

¶27 It appears that the motion for a new trial was not timely, as it was filed more than a month after the verdict. *See* Ariz. R. Crim. P. 24.1(b) (requiring new trial motion to be filed "no later than 10 days after the verdict"). Even if timely, Cotham has not shown how the superior court's revocation of his right to represent himself was error, which was the ground

stated in his motion. *See* Ariz. R. Crim. P. 24.1(c)(4). On this record, the superior court did not abuse its discretion in denying Cotham's motion.

## VIII. There Was No Error In Denying The Jury The Use Of The Statute On Child Prostitution.

**¶28** Cotham argues the jury's request to view the child prostitution statute "shows the jury had problems determining what the defendant was charged with" and that the court erred in denying the jury's request. Because Cotham failed to object to the superior court's response to the jury's request, he waived the right to raise the issue on appeal absent fundamental error. *See* Ariz. R. Crim. P. 21.3(c); *Henderson*, 210 Ariz. at 567–68 ¶¶ 19–20, 115 P.3d at 607–08. The superior court's response to a jury question is reviewed for abuse of discretion. *See State v. Ramirez*, 178 Ariz. 116, 126, 871 P.2d 237, 247 (1994).

**¶29** Cotham has not shown how the superior court's response to the jury's request was error, let alone fundamental error. During deliberations, the jury submitted a note stating "[w]e would like to see a copy of all police reports, the hotel receipts & a copy of the statute of the law for child prostitution." After consultation with both parties, the court responded in writing stating "[p]lease refer to the jury instructions and the evidence presented at trial, including the exhibits that were admitted." Cotham's counsel agreed with the court's response and made no objection. Although Cotham posits what might have prompted the jury to make this request, he does not indicate how the court's response was error. On this record, the court did not abuse its discretion in responding to the jury's inquiry.

## CONCLUSION

**¶30** This court has read and considered counsel's brief and Cotham's pro se supplemental brief, and has searched the record provided for reversible error and has found none. *State v. Leon*, 104 Ariz. 297, 300, 451 P.2d 878, 881 (1969); *State v. Clark*, 196 Ariz. 530, 537 ¶ 30, 2 P.3d 89, 96 (App. 1999). Accordingly, Cotham's convictions and resulting sentences are affirmed.

**¶31** Upon filing of this decision, defense counsel is directed to inform Cotham of the status of his appeal and of his future options. Defense counsel has no further obligations unless, upon review, counsel identifies an issue appropriate for submission to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584–85, 684 P.2d 154,

156–57 (1984). Cotham shall have 30 days from the date of this decision to proceed, if he desires, with a pro per motion for reconsideration or petition for review.



Ruth A. Willingham · Clerk of the Court

F I L E D : ama